not stay proceedings in this case is not clearly erroneous.[8]

## IV.

Because we hold that a notice of appeal need not be filed in the bankruptcy court within ten days of that court's entry of proposed findings and conclusions in related proceedings that must in any event be reviewed by the district court, the appellee's motion to dismiss this appeal is DE-NIED. Because we hold that the district court correctly found that the motel was property of the debtor's estate, and because the bankruptcy court properly refused to stay its proceedings in this case, the order of the district court is AFFIRMED.

**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Charles J. QUILTY, Frank Fessler, and**
**Larry A. Morlan,**
**Defendants-Appellants.**

**No. 83–3133.**

United States Court of Appeals,
Seventh Circuit.

Argued June 6, 1984.

Decided Aug. 22, 1984.

Mark D. Stuaan, Asst. U.S. Atty., Peoria, Ill., for plaintiff-appellee.

Kary Love, Moline, Ill., for defendants-appellants.

Before CUDAHY and ESCHBACH, Circuit Judges, and EDWARDS, Circuit Judge.*

* The Honorable George Edwards, Circuit Judge of the United States Court of Appeals, Sixth Circuit, is sitting by designation.

PER CURIAM.

This is an appeal by three defendants who were arrested on the premises of the Rock Island Arsenal while participating in a peaceful "prayer meeting." Each defendant had been served with a "Bar Letter" after his prior participation in an anti-nuclear demonstration on the Arsenal premises.

Quilty's Bar Letter reads as follows:

/s/ MR. CHUCK QUILTY

By the authority vested in me as Commander of Rock Island Arsenal I hereby bar you from Rock Island Arsenal and order you not to reenter Rock Island Arsenal for any reason prior to 24 FEB 1983. For the purpose of this order Rock Island Arsenal includes Arsenal Island and all access thereto, except the Rock Island Arsenal Viaduct, Fort Armstrong Avenue, and the Rock Island Arsenal Bridges that connect the Arsenal with the cities of Rock Island, Illinois and Davenport, Iowa.

The reason for this bar action is that on 24 FEB 1982 you engaged in a demonstration on Rock Island Arsenal in the vicinity of Building 321 in violation of Rock Island Regulation 1–19, Paragraph 1–33.

You are further advised that Title 18, Section 1382 of the United States Code provides that,

"Whoever reenters or is found within any such reservation, post, fort, arsenal, yard, station, or installation, after having been removed therefrom or ordered not to reenter by any officer or person in command or charge thereof

. . .

"Shall be fined not more than $500 or imprisoned not more than six months, or both."

Should you reenter or be found on Rock Island Arsenal, as herein defined, in violation of my order, you will be subject to prosecution in the Federal Court and conviction could result in a fine or your imprisonment or both.

Bar letters received by the other appellants were of similar notice and form, ex-cept that Morlan's letter did not contain his name or the signature of an Arsenal official. Each letter, however, gave adequate notice of the consequences which might ensue upon reentry to the Arsenal, and Morlan stipulated his letter was issued by "an authorized official."

Our examination of this record does not disclose any challenge to the facts related in the paragraphs above. Nor is there any indication that appellants sought to challenge the validity of the Bar Letters before their reentry into the Rock Island Arsenal on April 10, 1982, which led to the instant prosecution.

Quilty's and Fessler's letters were dated February 24, 1982; Morlan's was dated March 5, 1982. It is undisputed that all three reentered the Arsenal on April 10, 1982. The statute upon which the government relies for this prosecution is 18 U.S.C. § 1382. It reads as follows:

§ 1382. Entering military, naval, or Coast Guard property

Whoever, within the jurisdiction of the United States, goes upon any military, naval, or Coast Guard reservation, post, fort, arsenal, yard, station, or installation, for any purpose prohibited by law or lawful regulation; or

Whoever reenters or is found within any such reservation, post, fort, arsenal, yard, station, or installation, after having been removed therefrom or ordered not to reenter by any officer or person in command or charge thereof—

Shall be fined not more than $500 or imprisoned not more than six months, or both.

The cases were tried before a U.S. Magistrate under Rule 7 of the Rules of Procedure for the Trial of Misdemeanors Before U.S. Magistrates. The Magistrate found each guilty and sentenced Quilty to 90 days, Morlan to 45 days, and Fessler to one year of unsupervised probation and a $300 fine. On appeal to the District Judge, the convictions were affirmed.

On appeal to this court, appellants argue that their convictions violated the first and fifth amendments, that the District Court erred in not acquitting them on their de-

fense of necessity and that the Bar Letters were procedurally invalid.[1]

■ The first of these claims has been resolved by the Supreme Court in *Greer v. Spock*, 424 U.S. 828, 96 S.Ct. 1211, 47 L.Ed.2d 505 (1976). The court there said:

A necessary concomitant of the basic function of a military installation has been "the historically unquestioned power of [its] commanding officer summarily to exclude civilians from the area of his command." *Cafeteria Workers v. McElroy*, 367 U.S. 886, 893 [81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961)]. The notion that federal military reservations, like municipal streets and parks, have traditionally served as a place for free public assembly and communication of thoughts by private citizens is thus historically and constitutionally false.

The respondents, therefore, had no generalized constitutional right to make political speeches or distribute leaflets at Fort Dix, and it follows that Fort Dix Regs. 210–26 and 210–27 are not constitutionally invalid on their face.

424 U.S. at 838, 96 S.Ct. at 1217.

The *Greer* case in footnote 10 also answers appellants' first and fifth amendment claims, and specifically the contention that their rights were violated because organized religious services were permitted by Arsenal officials on some occasions:

10 The fact that other civilian speakers and entertainers had sometimes been invited to appear at Fort Dix did not of itself serve to convert Fort Dix into a public forum or to confer upon political candidates a First or Fifth Amendment right to conduct their campaigns there. The decision of the military authorities that a civilian lecture on drug abuse, a religious service by a visiting preacher at the base chapel, or a rock musical con-

cert would be supportive of the military mission of Fort Dix surely did not leave the authorities powerless thereafter to prevent any civilian from entering Fort Dix to speak on any subject whatever. 424 U.S. at 838 n. 10, 96 S.Ct. at 1217 n. 10.

■ The defense of "necessity" upon which appellants also rely, has been recognized in *United States v. Bailey*, 444 U.S. 394, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980), with two conditions: 1) the defendants must reasonably believe their criminal conduct "was necessary to avoid a harm more serious than that sought to be prevented by the statute defining the offense," and 2) there must be no "reasonable, legal alternative to violating the law." 444 U.S. at 410, 100 S.Ct. at 635. The *Bailey* opinion also contains this fuller statement:

Under any definition of these defenses one principle remains constant: if there was a reasonable, legal alternative to violating the law, "a chance both to refuse to do the criminal act and also to avoid the threatened harm," the defenses will fail.

*Id.*

It is, of course, impossible to argue that nuclear war is not a more serious harm than a peaceful, if unlawful, anti-nuclear prayer demonstration[2] at the Arsenal. It is just as impossible, however, to argue that there are not reasonable alternatives to violating the law under which these defendants were convicted. There are thousands of opportunities for the propagation of the anti-nuclear message: in the nation's electoral process; by speech on public streets, in parks, in auditoriums, in churches and lecture halls; and by the release of information to the media, to name only a few. *United States v. Bailey* authoritatively answers appellants' third argument in this appeal, inasmuch as "a rea-

---

1. We have carefully examined the procedural arguments which appellants' counsel have advanced. We have not, however, been able to ascertain any significant error or omission in the dispatch or wording of the "bar" letters which was not cured by stipulation. Their issuance is plainly within the authority of the Arsenal command under the terms of Title 18, U.S.C. § 1382.

2. Reciting the prayer of St. Francis is certainly not an "anti-nuclear demonstration" under all circumstances and at all times. When spoken on the premises of a federal nuclear arsenal by persons who have been officially barred from the property as a result of a prior demonstration, this characterization is, we believe, appropriate.

sonable, legal alternative to violating the law" clearly existed. *Id.*

Appellants cite to us and rely upon *Commonwealth of Pennsylvania v. Berrigan,* —— Pa.Super. ——, 472 A.2d 1099 (1984) (en banc), and *Kiiskila v. Nichols,* 433 F.2d 745 (7th Cir.1970) (en banc). *See also Kiiskila v. United States,* 466 F.2d 626 (7th Cir.1972).

The first of these cases was tried in the state courts of Pennsylvania and, on appeal, resulted in a remand for new trial by the majority of the Superior Court of Pennsylvania, Philadelphia Office. The majority opinion cited *United States v. Bailey, supra,* quoted substantially different justification defenses provided by Pennsylvania law, 18 Pa.C.S. §§ 501 and 503, and held that *United States v. Bailey* "while instructive" was "not binding on our understanding of Pennsylvania's defense of justification." 472 A.2d at 1104.

While we accept the Pennsylvania Superior Court's interpretation of Pennsylvania law, and recognize that *Bailey* may not be binding on that court, we cannot disclaim its authority over the United States Courts of Appeals.

We have also considered the *Kiiskila* cases cited above, to the extent they instruct a different formulation on the first amendment question. These cases were decided in the early 1970's, well before the Supreme Court's decision in *Greer v. Spock, supra.* The federal necessity defense was defined in 1980 in *United States v. Bailey, supra.* As indicated above, we are required to regard the majority opinions in the *Spock* and *Bailey* cases as established law, which this Circuit must now follow.

We recognize that appellants may well view themselves as inheritors of a tradition of civil disobedience which historically has encompassed American political dissent from Thomas Paine to Henry David Thoreau to Martin Luther King, Jr. It would be hard to argue that appellants' cause— apparently a general effort to stop nuclear war—is not comparable in significance to those which motivated these just named figures in their respective causes. Fur-

ther, there is nothing in this record to show that their conduct was in any respect violent or disruptive. These considerations, however, do not alter the duty of the federal courts to enforce the laws established by a Congress elected by the people, under interpretations which the Supreme Court has upheld as consistent with the United States Constitution.

The convictions are affirmed.