UNITED STATES of America, Plaintiff-Appellee,

v.

Walter Ward DORRELL, III, Defendant-Appellant.

No. 84–5121.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 7, 1985.

Decided April 17, 1985.

Paul Seave, Los Angeles, Cal., for plaintiff-appellee.

Yolanda B. Gomez, Los Angeles, Cal., for defendant-appellant.

Before SNEED, POOLE, and FERGUSON, Circuit Judges.

SNEED, Circuit Judge:

The defendant, Walter Ward Dorrell III, appeals from his convictions for willfully injuring property of the United States, in violation of 18 U.S.C. § 1361 (1982), and for knowingly entering a military reservation for an unlawful purpose, in violation of 18 U.S.C. § 1382 (1982). Dorrell objects to the trial court's refusal to allow him to present a defense of necessity and to the court's exclusion of certain evidence and redaction of his written confession. The district court had jurisdiction under 18 U.S.C. § 3231 (1982). This court has jurisdiction over Dorrell's timely appeal under 28 U.S.C. § 1291 (1982). We affirm.

I.

## FACTS AND PROCEEDINGS BELOW

On December 21, 1983, security guards apprehended the defendant in the area of the missile assembly plant at Vandenburg Air Force Base. After searching the defendant and the surrounding area, the guards found that Dorrell had carried with him a variety of tools, including a sledgehammer, two screwdrivers, a pair of bolt cutters, a crescent wrench, and a can of spray paint. Political slogans had been spray-painted on the missile assembly building and on a large shipping container standing nearby.

Dorrell was taken to the base security building and questioned. He received and waived his *Miranda* rights. He then admitted that he had entered the base with the intention of damaging the MX missiles and that he had spray-painted the missile assembly building. Finally, Dorrell prepared a written statement setting forth the substance of his oral confession.

Two days earlier, Dorrell had made a videotape, explaining his motivation for entering the base. On the tape, Dorrell stated that he intended to enter the base and destroy the MX missile. He wished to pound the missile into scrap metal, which could be used to make an instrument of peace. His desire to do so stemmed from his concern about nuclear war and world starvation. Dorrell expressed similar sentiments in both his oral confession and his written statement.

At a pretrial discovery conference, Dorrell's counsel intimated that Dorrell intended to assert the necessity defense. The government moved in limine to exclude this defense.[1] At the hearing on the motion, the district court ruled that the defendant should make an in camera offer of proof if he intended to assert the defense at trial. Accordingly, Dorrell lodged under seal an offer of proof summarizing the evidence he

---

1. The motion in limine also pertained to Dorrell's effort to introduce a defense based on international law. Dorrell apparently abandoned that defense, and the district court, in its order granting the government's motion to exclude the necessity defense, noted that the corresponding motion in limine was moot. Dorrell has made no attempt to reassert his international law defense on appeal.

would present in support of a necessity defense. Essentially, Dorrell proposed to introduce his own testimony and the testimony of three other witnesses about the threat of nuclear war and to play his videotape to the jury.

After reviewing the defendant's offer of proof, the district court granted the government's motion in limine, finding that the proffered evidence was insufficient as a matter of law to support the necessity defense. The court also rebuffed Dorrell's efforts to introduce the videotape, ruling on the morning of the trial that the tape was inadmissible. Finally, the court granted the government's motion in limine to redact the defendant's written confession, removing as irrelevant those portions that stated his reasons for entering Vandenburg.

Following a jury trial, Dorrell was found guilty as charged. He received a suspended sentence and was placed on probation for five years. Commencement of the probationary period was stayed pending the outcome of this appeal.

## II.

### ISSUES

The primary issue raised on appeal concerns the trial court's treatment of the necessity defense. Dorrell contends that the trial court erred in granting the government's motion in limine to exclude that defense. Dorrell also argues that the trial court abused its discretion in refusing to admit the videotape into evidence and in redacting Dorrell's written confession.

## III.

### DISCUSSION

#### A. *Necessity Defense*

In support of his position that the granting of the motion in limine was error, Dorrell argues that the judge should have allowed him to present the evidence to the jury before ruling on the defense. Had he failed to establish the elements of the defense, the appropriate response, Dorrell contends, would have been to decline to give a jury instruction on necessity. This contention is without merit.

██ Admittedly, a criminal defendant has the right to have a jury resolve disputed factual issues. *United States v. Contento-Pachon*, 723 F.2d 691, 695 n. 2 (9th Cir.1984); *see Sandstrom v. Montana*, 442 U.S. 510, 523, 99 S.Ct. 2450, 2458, 61 L.Ed.2d 39 (1979). Where the evidence, even if believed, does not establish all of the elements of a defense, however, the trial judge need not submit the defense to the jury. *United States v. Bifield*, 702 F.2d 342, 346 (2d Cir.), *cert. denied*, 461 U.S. 931, 103 S.Ct. 2095, 77 L.Ed.2d 304 (1983); *see United States v. Bailey*, 444 U.S. 394, 416–17, 100 S.Ct. 624, 637–38, 62 L.Ed.2d 575 (1980). Accordingly, we have in the past allowed the district court to determine the admissibility of the necessity defense by motions in limine. *See, e.g., Contento-Pachon*, 723 F.2d at 695; *United States v. Lowe*, 654 F.2d 562, 566–67 (9th Cir.1981). The sole question presented in such situations is whether the evidence, as described in the defendant's offer of proof, is insufficient as a matter of law to support the proffered defense. If it is, then the trial court should exclude the defense and the evidence offered in support. *Contento-Pachon*, 723 F.2d at 693 (duress defense); *United States v. Shapiro*, 669 F.2d 593, 596 (9th Cir.1982) (same); *accord United States v. Karr*, 742 F.2d 493, 497 (9th Cir. 1984); *United States v. Gordon*, 526 F.2d 406, 408 (9th Cir.1975). The trial court ruled properly in this case.

██ "The defense of necessity is available when a person is faced with a choice of two evils and must then decide whether to commit a crime or an alternative act that constitutes a greater evil." *Contento-Pachon*, 723 F.2d at 695.[2] Asserting the de-

---

**2.** Traditionally, courts have applied the necessity defense when the actor's choices were dictated by physical forces beyond the actor's control,

applying the defense of duress to coercion stemming from the actions of other human beings. *United States v. Bailey*, 444 U.S. 394, 409–10, 100

fense requires a showing that the defendant "act[ed] to prevent 'an imminent harm which no available options could similarly prevent.'" *United States v. Nolan,* 700 F.2d 479, 484 (9th Cir.) (quoting *United States v. May,* 622 F.2d 1000, 1008 (9th Cir.), *cert. denied,* 449 U.S. 984, 101 S.Ct. 402, 66 L.Ed.2d 247 (1980)), *cert. denied,* 462 U.S. 1123, 103 S.Ct. 3095, 77 L.Ed.2d 1354 (1983). In addition, the defendant must establish that he reasonably anticipated the existence of a direct causal relationship between his conduct and the harm to be averted. *See United States v. Simpson,* 460 F.2d 515, 518 (9th Cir.1972); *see also United States v. May,* 622 F.2d 1000, 1008 (9th Cir.), *cert. denied,* 449 U.S. 984, 101 S.Ct. 402, 66 L.Ed.2d 247 (1980).

Here, Dorrell's asserted necessity defense fails for two reasons. First, even if believed, the evidence summarized in his offer of proof does not establish that Dorrell lacked alternative courses of action to change United States nuclear policy or to avert the risk of nuclear war. Second, Dorrell cannot establish that he reasonably anticipated that breaking into Vandenburg

S.Ct. 624, 634–35, 62 L.Ed.2d 575 (1980); *Contento-Pachon,* 723 F.2d at 695; *United States v. Micklus,* 581 F.2d 612, 615 (7th Cir.1978). Modern cases have blurred this distinction, *see Bailey,* 444 U.S. at 410, 100 S.Ct. at 634, and courts have considered the defense of necessity when, as here, the defendant assertedly acted in the interest of the general welfare. *Contento-Pachon,* 723 F.2d at 695. We believe Dorrell's defense is properly characterized as necessity. *See also* W. LaFave & A. Scott, *Handbook on Criminal Law* § 50, at 381 n. 2 (1972) ("The typical duress case ... has involved a situation in which A has ordered B to engage in certain conduct prohibited by the criminal law or else suffer certain consequences. It might well be argued that when an individual acts to avoid a greater harm from a person who has not given such an order ... the situation ought to be dealt with as a form of necessity rather than duress.") (citation omitted).

**3.** The narrow limits of the defense are perhaps best illustrated by the Supreme Court's decision in *United States v. The Diana,* 74 U.S. (7 Wall.) 354, 19 L.Ed. 165 (1869). There, the necessity argument was advanced by the master of a ship trying to run the Union blockade of Confederate ports during the Civil War. A unanimous Court said:

would achieve these ends. We shall examine briefly each of these deficiencies.

1. *The Availability of Other, Legal Alternatives to Violating The Law*

■ Those who wish to protest in an unlawful manner frequently are impatient with less visible and more time-consuming alternatives. Their impatience does not constitute the "necessity" that the defense of necessity requires. So it is here. Dorrell made no showing of the required "necessity." "The defense of necessity does not arise from a 'choice' of several sources of action; it is instead based on a real emergency." *United States v. Lewis,* 628 F.2d 1276, 1279 (10th Cir.1980), *cert. denied,* 450 U.S. 924, 101 S.Ct. 1375, 67 L.Ed.2d 353 (1981).[3] Consequently, "if there was a reasonable, legal alternative to violating the law," the defense fails. *United States v. Bailey,* 444 U.S. 394, 410, 100 S.Ct. 624, 634, 62 L.Ed.2d 575 (1980); *accord United States v. Quilty,* 741 F.2d 1031, 1033 (7th Cir.1984); *United States v. Gant,* 691 F.2d 1159, 1163–64 (5th Cir. 1982). Here, Dorrell had such an alternative.[4]

It is undoubtedly true that a vessel may be in such distress as to justify her in attempting to enter a blockaded port. She may be out of provisions or water, or she may be in a leaking condition, and no other port be of easy access. The case, however, must be one of absolute and uncontrollable necessity; and this must be established beyond a reasonable doubt. "Nothing less," says Sir William Scott, "than an uncontrollable necessity, which admits of no compromise, and cannot be resisted," will be held a justification of the offense. Any rule less stringent than this would open the door to all sorts of fraud. Attempted evasions of the blockade would be excused upon pretenses of distress and danger, not warranted by the facts, but the falsity of which it would be difficult to expose.

**4.** In *United States v. Richardson,* 588 F.2d 1235 (9th Cir.1978), *cert. denied,* 440 U.S. 947, 99 S.Ct. 1426, 59 L.Ed.2d 636 (1979), we considered a defense of necessity interposed against a charge of conspiring to smuggle the drug laetrile into the United States. The FDA had classified laetrile as a new drug, requiring FDA approval before the drug could be transported in interstate commerce. Because the FDA had withheld its approval, and because customs officials would therefore seize all quantities of the drug

■ Although it is doubtful that Dorrell could bring a legal challenge to United States nuclear policy, he does have recourse to the political process to redress his concerns regarding nuclear war. "There are thousands of opportunities for the propagation of the anti-nuclear message: in the nation's electoral process; by speech on public streets, in parks, in auditoriums, in churches and lecture halls; and by the release of information to the media, to name only a few." *Quilty*, 741 F.2d at 1033. The availability of this option prevents Dorrell from raising the necessity defense in the instant case.

Courts in other circuits have considered the status of the political process as an alternative to criminal behavior and have concluded that the defendant's failure to resort to the political process precludes the assertion of the necessity defense to charges arising from political protests. For instance, in *United States v. Seward*, 687 F.2d 1270 (10th Cir.1982), *cert. denied*, 459 U.S. 1147, 103 S.Ct. 789, 74 L.Ed.2d 995 (1983), the Tenth Circuit upheld the trial court's refusal to entertain the defendant's proferred necessity defense in a prosecution for trespassing arising from protests at the site of a nuclear power plant. The court noted that

> [t]he defense of necessity .... can be asserted only by a defendant who was confronted with such a crisis as a personal danger, a crisis which did not permit a selection from among several solutions, some of which did not involve criminal acts. It is obviously not a defense to charges arising from a typical protest.

*Id.* at 1276; *accord United States v. Cassidy*, 616 F.2d 101, 102 (4th Cir.1979); *cf. Quilty*, 741 F.2d at 1033–34 (defendants

convicted of illegally entering military property were not entitled to a judgment of acquittal based on the necessity defense because of the availability of reasonable, legal, alternative ways to express their political message).

Admittedly, Dorrell's offer of proof details his participation in a variety of protest activities and asserts that his political efforts were unavailing in preventing the development of the MX missile. In this respect Dorrell differs little from many whose passionate beliefs are rejected by the will of the majority legitimately expressed. Moreover, it may be he understates the effectiveness of the political process in this particular instance. To accept Dorrell's position would amount to recognizing that an individual may assert a defense to criminal charges whenever he or she disagrees with a result reached by the political process. While the policy underlying the necessity defense is the promotion of greater values at the expense of lesser values, *see* W. LaFave & A. Scott, *supra*, § 50, at 382, it does not follow that the law should excuse criminal activity intended to express the protestor's disagreement with positions reached by the lawmaking branches of the government. To do otherwise would deprive the protest of the validation of its sincerity that lawful punishment provides, force the courts to choose among causes they should make legitimate by extending the defense of necessity, and transgress the principle of separation of powers. *Cf. United States v. May*, 622 F.2d 1000, 1009 (9th Cir.1980) (rejecting proffered defense that the defendant's acts were necessary to prevent violations of international law by the United States and noting, "We do not sit to render judgments

---

declared at the border, the defendants determined to smuggle laetrile produced in Mexico into the United States. *Id.* at 1237–38. After considering an offer of proof, the district court excluded the defendants' evidence pertaining to the defense that showed laetrile's utility as a cancer drug and the defendants' contentions that the FDA classification was improper. *Id.* at 1239 n. 3. This court affirmed, on the basis that the defendants had failed to pursue other alternatives that were available to them. The de-

fendants could have produced laetrile in the United States, rather than smuggle it across the border. Better still, they could have taken steps to make their actions legal by mounting a legal challenge to the FDA's classification or its failure to approve the drug. Alternatively, the defendants could have legally challenged the seizure of the drug at the border. The defendants' failure to pursue these options precluded their assertion of the necessity defense. *Id.* at 1239.

upon the legality of the conduct of the government at the request of any person who asks us to because he happens to think that what the government is doing is wrong.... To [do so] would ... usurp[ ] the functions that the Constitution has given to the Congress and to the President."), *cert. denied*, 449 U.S. 984, 101 S.Ct. 402, 66 L.Ed.2d 247 (1980). Accordingly, we hold that the availability of alternative avenues for political action requires affirmance of the district court's decision to exclude Dorrell's necessity defense.

### 2. *Direct Causal Relationship Between Dorrell's Conduct and the Harm to Be Averted*

■ Dorrell's argument also fails because he has not established that his actions would bring about the ends he sought. "An essential element of the so-called justification defenses is that a direct causal relationship be reasonably anticipated to exist between the defender's action and the avoidance of harm." *United States v. Simpson*, 460 F.2d 515, 518 (9th Cir.1972). Here, Dorrell failed as a matter of law to establish that his entry into Vandenburg and his spray-painting of government property could be reasonably anticipated to lead to the termination of the MX missile program and the aversion of nuclear war and world starvation.

*Simpson* supports this result. There the defendant broke into the file room of a local office of the Selective Service Administration and set fire to the Administration's draft records. Accused of destroying government property in violation of 18

U.S.C. § 1361, the defendant sought during trial to introduce evidence showing that his actions were justifiable as an effort to avert the death and destruction caused by the Vietnam War. The district court rejected the proffered evidence and refused to read an instruction based on the justification—or necessity—defense. *Id.* at 517. This court affirmed, noting that the defendant's actions were unreasonable. *Id.* at 518. The Vietnam conflict would have continued without regard to whether the local draft board could restore the damage done to its files. *Id.* at 518 n. 7. Therefore, the defendant's assumption that burning the file room might have a significant effect on the harm he sought to remedy was unreasonable. *Id.* at 518; *see also United States v. Cassidy*, 616 F.2d 101, 102 (4th Cir.1979) (throwing blood and ashes on the walls and ceiling of the Pentagon as part of a political protest could not reasonably be expected to bring about a change in United States policy regarding nuclear weapons).

We considered a situation virtually identical to the present case in *United States v. May*, 622 F.2d 1000 (9th Cir.), *cert. denied*, 449 U.S. 984, 101 S.Ct. 402, 66 L.Ed.2d 247 (1980). There, the defendants, protesting the Trident missile system, entered a Naval submarine base in violation of 18 U.S.C. § 1382. This court affirmed the district court's conclusion that the defendants had failed to satisfy all of the elements of the necessity defense "because there was no reasonable belief that a direct consequence of their actions would be the termination of the Trident program." 622 F.2d at 1008.[5]

---

**5.** Admittedly, the district court in *May* had allowed a full presentation of the necessity defense, and the Ninth Circuit based its finding upon a full factual record. All Dorrell seeks here is an opportunity to make a similar presentation. In *United States v. Lowe*, 654 F.2d 562 (9th Cir.1981), however, we upheld a decision to disallow a necessity defense as a matter of law on the same basis as that used by the *May* court—namely, that the defendants had failed to demonstrate that a direct consequence of their acts could reasonably be expected to be the termination of the policy they were protesting. *Lowe* arose from subsequent Trident protests at the same Naval base involved in *May*. Noting that the defendants had not offered evidence

indicating a significant change in conditions since the *May* case was decided, the *Lowe* court concluded that the district court had properly relied on *May* in rejecting the necessity defense as a matter of law. *Id.* at 566–67.

We reach the same result here. We recognize that the holding in *Lowe* rests at least in part on the factual record developed in *May*, while the facts of Dorrell's case are different. But the reasoning employed by the *Lowe* court applies with equal force in the present case. There is nothing in Dorrell's offer of proof indicating any significant difference between his conduct in entering Vandenburg and the conduct of the

Dorrell offers no indication of how he expected his conduct to bring about a change in the MX missile program or a reduction in the risk of nuclear war. He cannot demonstrate that he reasonably anticipated a direct causal relationship between his acts and the harm he sought to remedy. It follows that the district court's decision to reject the necessity defense as a matter of law was correct.

## B. *The Videotape*

On the videotape, Dorrell set forth his political and religious reasons for entering Vandenburg and damaging the missile assembly building. The district court ruled that the videotape was inadmissible after the government's opposition on grounds that it was hearsay and irrelevant. On appeal, Dorrell asserts that the videotape is admissible under Fed.R.Evid. 803(3) as a "statement of [his] then existing state of mind...."

The trial court's evidentiary rulings are reviewed for an abuse of discretion. *United States v. Ordonez,* 737 F.2d 793, 811 (9th Cir.1984). This standard applies to the trial court's exclusion of evidence as inadmissible hearsay. *See United States v. Layton,* 720 F.2d 548, 558 (9th Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 1423, 79 L.Ed.2d 748 (1984).

■ Dorrell seeks to introduce the videotape "to prove the truth of the matter asserted." That is, he seeks to prove what the videotape expresses—his reasons for entering Vandenburg and defacing the missile assembly building. The videotape therefore constitutes hearsay. Fed.R.Evid. 801(c).

■ Without regard to the possible admissibility of the videotapes under the hearsay exception of Rule 803(3) (then existing mental, emotional, or physical condition), the district court was entitled to exclude them under Rule 403. The rejection of the necessity defense reduced the relevance of the videotapes and, to the extent relevant, they were merely cumulative. Their exclusion did not constitute an abuse of discretion.

## C. *The Redacted Confession*

While in the custody of the Vandenberg security forces, Dorrell prepared a handwritten statement confessing to the acts charged. The statement also set forth his political and religious motivations for entering the military compound and defacing the missile assembly building. After precluding the necessity defense, the court granted the government's motion in limine to redact as irrelevant the portions of the written statement involving Dorrell's motivations.

On appeal, Dorrell contends that the court's redaction violated the "rule of completeness" embodied in Federal Rule of Evidence 106.[6] Rule 106 seeks to avoid the unfairness inherent in "[t]he misleading impression created by taking matters out of context." Fed.R.Evid. 106 advisory committee note.

■ Application of the rule of completeness is a matter for the trial judge's discretion. *United States v. Burreson,* 643 F.2d 1344, 1349 (9th Cir.), *cert. denied,* 454 U.S. 830, 102 S.Ct. 125, 70 L.Ed.2d 106, 454 U.S. 847, 102 S.Ct. 165, 70 L.Ed.2d 135 (1981). Thus, the judge may exclude portions of written statements offered into evidence that are irrelevant. *See id.* Where the redacted statement is a confession,[7] courts have held that there is no

---

*Lowe* and *May* defendants in entering the submarine base.

**6.** Rule 106 states in relevant part that "[w]hen a writing ... is introduced by a party, an adverse party may require him ... to introduce any other part ... which ought in fairness to be considered contemporaneously with it." Fed.R. Evid. 106.

**7.** Courts have used redacted confessions in fairly limited situations. The most common usage arises in criminal cases involving multiple defendants to avoid implicating nontestifying co-defendants. *See, e.g., United States v. Kaminski,* 692 F.2d 505, 522–23 (8th Cir.1982) (redaction of implicating portions precluded need for severed trials); *United States v. Marin,* 669 F.2d 73, 80 (2d Cir.1982) (redaction employed as an al-

violation of the rule of completeness if the edited version neither "distorts the meaning of the statement or excludes information substantially exculpatory of the declarant," *United States v. Kaminski,* 692 F.2d 505, 522 (8th Cir.1982), nor excludes "portions of a statement that are ... neither explanatory of [or] relevant to the admitted passages," *United States v. Marin,* 669 F.2d 73, 84–85 (2d Cir.1982) (citations omitted).

 In this case, removing Dorrell's explanation of the political and religious motivations for his actions did not change the meaning of the portions of his confession submitted to the jury. The redaction did not alter the fact that he admitted committing the acts with which he was charged. Further, because the defense of necessity was unavailable, Dorrell's motivation did not excuse the crimes he committed. The omitted portions of his confession were therefore not exculpatory.

We conclude that the redaction of Dorrell's statement did not create a misleading impression by taking matters out of context. Dorrell was not prejudiced by the omission of his motivations from the statement admitted into evidence. The redaction of Dorrell's statement by the district court, therefore, was not an abuse of its discretion.

AFFIRMED.

FERGUSON, Circuit Judge, concurring:

I concur in the opinion of the court but write separately to clarify a distinction between the necessity defense and civil disobedience which the majority appears not to consider. In addition, I cannot subscribe to any statement which purports to impose punishment on a defendant out of solicitude for the "validation of [the defendant's] sincerity that lawful punishment provides." At 432.

Civil disobedience has a long heritage in this country, beginning as far back as the Boston Tea Party. Moral motivations have frequently prompted citizens to violate laws they personally consider unjust. Some, like Thoreau, chose to refrain from society's fundamental obligation to pay taxes for the common benefit in order to express their repugnance to a government that fostered slavery. Others, like the Reverend Martin Luther King, Jr., choose to combat unjust laws directly by the nonviolent transgression of their terms. Regardless of the means chosen, those who practice civil disobedience do not challenge the rule of law or the incidents of an ordered society. Those engaged in civil disobedience acknowledge the validity of the pertinent law but find it personally offensive to their individual moral judgments.

Most of us refrain from picking and choosing those laws to which we would adhere. Those who practice civil disobedience transgress the law out of a conviction that a law or a set of laws are morally repugnant. The legitimacy that these laws have earned by virtue of their acceptance in society denigrates the moral authority attendant to the balance of society's laws. While rejecting the moral validity of these laws, those who espouse civil disobedience do so precisely because these laws enjoy society's imprimatur. They violate the law in order to obstruct its enforcement or to provide the catalyst for its subsequent abandonment by society. Their actions are not a denial of the legitimacy of the law or laws but rather an affirmation of the existence and applicability of the law in all its perceived iniquity.

Unlike the tradition of nonviolent civil disobedience, the necessity defense does not presuppose the applicability and legitimacy of any particular law as the factor precipitating the need to transgress society's laws. The necessity defense is a defense of justification whereby a defendant contends that his conduct is not unlawful given the peculiar circumstances incident to his election to follow a particular course of

ternative to severed trials). Redaction is also used to omit portions of a confession that refer to unrelated crimes. *See* 1 J. Weinstein & M.

Berger, *Weinstein's Evidence* ¶ 106[01], at 106–9 (1982).

conduct. Instead of the protester's affirmation of the pernicious legitimacy of a particular law, the necessity defense purports to cloak the violation of an unchallenged law with the veneer of legality based on the context of a defendant's calculated choice among treacherous alternatives. The defense, which we have inherited from early English common law, posits that "[a] man may break the words of the law, and yet not break the law itself ... where the words of them are broken ... through necessity." *Reninger v. Fagossa,* 1 Plowd. 1, 75 Eng.Rep. 1 (1551). *See* Arnolds & Garland, *The Defense of Necessity in Criminal Law: The Right to Choose the Lesser Evil,* 65 J.Crim.L. & Criminology 289, 291 (1974) (noting the origins of the necessity defense in early English common law).

As a defense of justification, the necessity defense proclaims legal some conduct which, in other contexts, would plainly be illegal. Its unparalleled potency, however, counsels caution in its application to the array of human conduct brought before the courts. The defense is not aimed at subverting existing laws or at hastening their demise. Rather, the defense simply recognizes that, in certain circumstances, the choice made by the defendant is a choice that society would also have made and now is given the opportunity to ratify.

Those who engage in civil disobedience to promote their individual moral judgments over those of society are willing to accept society's judgment of their conduct because it is an allegedly flawed judgment. *See United States v. Moylan,* 417 F.2d 1002, 1008 (4th Cir.1969). They take no comfort from the legal system's willingness to punish them for their beliefs. Faced with the choice between their individual mores and the requirements of the law, they choose to follow their own lights. The necessity defense, on the other hand, involves the ratification of a defendant's conduct by a society willing to make the same considered judgment.

In conclusion, the majority opinion fails to appreciate the essential difference between nonviolent civil disobedience as a means of challenging existing law and the assertion of necessity as a justification for otherwise unlawful conduct. References to the cathartic effect of punishment are, therefore, completely misplaced.