835 F.2d 875
 24 Fed. R. Evid. Serv. 233
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ralph E. SHUCK, Defendant-Appellant.
 No. 87-5032.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 6, 1987.
Decided Dec. 7, 1987.
 
 Joel Hirschhorn for appellant.
 Thomas Oliver Mucklow, Special Assistant United States Attorney (Michael W. Carey, United States Attorney; David E. Godwin, Special Assistant United States Attorney, on brief), for appellee.
 Before DONALD RUSSELL, MURNAGHAN, and ERVIN, Circuit Judges.
 PER CURIAM:
 
 
 1
 In this appeal Ralph Shuck challenges his convictions on drug-related charges arising out of activities conducted at the Spruce Flats farm in Marlington, West Virginia. Shuck was convicted of conspiracy to possess with intent to distribute marijuana in violation of 21 U.S.C. section 841(a)(1)[1] and he was convicted of cultivating marijuana in violation of the same section of the United States Code. Because we find no reversible error in the proceedings below, we affirm his convictions.
 
 I.
 
 2
 Evidence put before the jury during Shuck's trial in December of 1986, revealed that Shuck was one of the leading operators in a marijuana farm known as Spruce Flats, located in Marlington, West Virginia. Shuck operated the farm with a number of others, including Frank Becker and Michael Hogan. A number of Shuck's colleagues were either promised immunity, or entered plea agreements with state and federal officials to testify against the appellant.
 
 
 3
 The government presented prior sworn testimony from Shuck[2] that he had leased Spruce Flats under an assumed name to avoid financial obligations elsewhere. The appellant's prior testimony also revealed the names of his colleagues at Spruce Flats and the fact that marijuana was being grown at the farm. The government also produced evidence that Shuck was growing marijuana on another farm in Upshur County, known as Audra. The money generated from the crop raised at Audra was used to fund the Spruce Flats operation.
 
 
 4
 Corporal W.P. Baker first observed, by aerial surveillance, the activities at Spruce Flats on June 27, 1981. When he arrived at the farm, he saw a dump truck with marijuana growing in the bed of the truck. Through a license tag check, Baker traced the ownership of the truck to appellant. Shuck's residence was learned to be Audra. Through the use of a search warrant which authorized Baker to search Audra for Ralph "Timms," or evidence connecting Ralph "Timms" to Shuck, Baker found evidence connecting Shuck to the Spruce Flats farm.
 
 
 5
 At the conclusion of the trial, the jury found Shuck guilty of conspiring to possess with intent to distribute marijuana, and guilty of cultivating marijuana. Appellant was sentenced to concurrent four year sentences for the two offenses. This appeal followed.
 
 II.
 
 6
 On appeal, Shuck contends that errors committed by the trial court were so prejudicial as to justify reversal of his conviction. Shuck first argues that he was denied a fair and impartial trial because the trial court improperly commented on the plea agreements in his instructions to the jury. The appellant also argues that the trial court committed errors in its evidentiary rulings because of its treatment of Shuck's prior sworn testimony and by admitting evidence that marijuana was grown at Audra. Finally, Shuck maintains that no probable cause existed to search Audra farm, and that the evidence obtained from the search should have been suppressed. Although we agree that the trial court's comments on the necessity of plea agreements were ill-advised, we find no reversible error in this instance. We further find the remainder of appellant's contentions to be without merit.
 
 
 7
 During instructions, the district court made several comments about the witnesses who had testified pursuant to plea agreements. The court referred to plea agreements as "approved by rules promulgated by the nation[']s court system and approved by [C]ongress as an important component of the administration of justice." The court said such agreements are "to be encouraged" because they lead "to the prompt and largely final disposition of criminal cases" and sometimes they are "the only method available to bring the responsible participants to court to answer criminal charges."[3] Considered in the light of the full instructions given to the jury, we are persuaded that appellant has suffered no prejudice from the court's comments.
 
 
 8
 In reviewing jury instructions, we are to evaluate the instructions as a whole, rather than conduct a phrase by phrase review. Morris v. State of Maryland, 715 F.2d 106 (4th Cir.1983); Cooper v. State of North Carolina, 702 F.2d 481 (4th Cir.1983); Guthrie v. Warden, Maryland State Penitentiary, 683 F.2d 820 (4th Cir.1982); United States v. Walker, 677 F.2d 1014 (4th Cir.1982); and United States v. Lopez, 611 F.2d 44 (4th Cir.1979). Prior to the trial court's description of the plea bargain process noted above, the court issued cautionary instructions that witnesses who have entered plea agreements "may have a reason to make a false statement because that person wants to strike a good bargain with the government."[4] Thus, the district court first cautioned the jurors about the credibility of testimony obtained from witnesses who have agreed to testify as part of a bargain with the government; then the court balanced this description of the credibility of interested witnesses by explaining that plea agreements are an inherent feature of the criminal justice system. The trial court gave a balanced view of the weight to be accorded these witnesses' testimony by telling the jurors of the dangers and benefits of their testimony. When the quoted excerpts are read in the context of the instructions as a whole, it becomes clear that the trial court did not unfairly favor the government.
 
 III.
 
 9
 Shuck next takes issue with the trial court's evidentiary rulings. In particular, he argues that the court's treatment of the prior sworn testimony introduced by the government violated the completeness doctrine found in Federal Rule of Evidence 106.[5] The portion of the testimony used by the government involved the appellant's use of a fictitious name to rent the Spruce Flats farm, his financial problems with the Audra farm, the people present at Spruce Flats, the names of people engaged in marijuana cultivation at Spruce Flats, and his knowledge of the marijuana growing operation at Audra farm. To this testimony, Shuck requested that the government also be required to read materials from the earlier transcript to the effect that he had never been convicted of a crime, that he had only been arrested once and the charges were dropped, and that he had testified before a grand jury. The district court found that these materials were not within the subject matter of the materials offered by the government and as such, were unnecessary under Rule 106. We agree with the trial court.
 
 
 10
 Rule 106 has been interpreted to give the trial court discretion to determine what might be required to fairly explain an admitted portion of a transcript, to fairly place it in context, or to fairly prevent it from being misleading in some other regard. United States v. Dorrell, 758 F.2d 427 (9th Cir.1985); United States v. Soures, 736 F.2d 87 (3d Cir.1984), cert. denied, 105 S.Ct. 914 (1985); and United States v. Marin, 669 F.2d 73 (2d Cir.1982). The court can exclude portions of the statement that are neither explanatory, nor relevant. Dorrell, 758 F.2d at 434. The appellant, by his own admission, sought to introduce the additional portions of the transcript in an effort to rehabilitate himself. General rehabilitation, such as being free of a state or federal conviction, or testifying before a grand jury, is not directly relevant to Shuck's admissions. Nor do such materials explain the passages introduced by the government. Nor were the additional portions necessary to avoid misleading the trier of fact. Accordingly, we conclude that the trial court acted within its discretion by refusing to admit the additional passages requested by Shuck.
 
 
 11
 Shuck also argues that the trial court abused its discretion when it admitted evidence that appellant was growing marijuana at Audra at the same time Spruce Flats was in operation. Michael Hogan testified that he had gone from Spruce Flats to work at Audra on several occasions to tend the marijuana crop. The testimony at trial also revealed that the marijuana from Audra was delivered to Spruce Flats for drying only weeks before the second farm was raided. Furthermore, the Spruce Flats operation was funded in part with proceeds from marijuana grown at Audra. The existence of the Audra operation is clearly part of the overall conspiracy and, as such, we believe that this evidence was properly admitted.
 
 IV.
 
 12
 Shuck's final argument presses this court for a ruling that the search of his home in Upshur County, West Virginia (Audra), was illegal because the warrant used by Corporal Baker was faulty. The appellant maintains that no probable cause existed to justify the issuance of the warrant because the affidavit upon which the warrant was predicated did not sufficiently link Audra with the illegal activities at Spruce Flats. This argument is without merit.
 
 
 13
 Rule 41(b) of the Federal Rules of Criminal Procedure provides for the issuance of a search warrant and seizure of both property and persons. Trooper Baker testified that he went to Upshur County to obtain a search warrant to look for appellant. The affidavit for the search warrant indicates that Baker was searching for a Ralph Timms, as well as evidence indicating that Ralph Shuck and Ralph Timms were one and the same person. The magistrate who issued the warrant knew through the affidavit that a Ralph "Timms" had leased the property on which three acres of marijuana had been seized. Shuck's Mercedes had been seen at both farms. Shuck was the owner of the dump truck which was observed at Spruce Flats. Finally, a man named Ralph had called Spruce Flats several times from the Audra State Park, a facility which is close to Audra. These facts, while somewhat sketchy, set forth probable cause to believe that Ralph Timms and Ralph Shuck are the same person. Thus, the search warrant was properly issued for a search of Audra and a seizure of either Ralph Timms (Shuck) or any evidence connecting Ralph Timms with the Spruce Flats farm.[6]
 
 
 14
 For the foregoing reasons, the criminal convictions of appellant Shuck are affirmed.
 
 
 15
 AFFIRMED.
 
 
 
 [1]
 21 U.S.C. section 841(a)(1) provides:
 (a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally--
 (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance.
 
 
 [2]
 The prior sworn testimony was taken from appellant's earlier trial for perjury, which resulted in his conviction. United States v. Shuck, Northern District of West Virginia, No. 85-0054-E)
 
 
 [3]
 The trial court's contested instruction reads in pertinent part:
 Now let me note that the disposition of criminal charges by an agreement between the prosecution and the accused, which is often referred to as a plea agreement, has been approved by rules promulgated by the nation[']s court system and approved by [C]ongress as an important component of the administration of justice. And when plea agreements are properly administered, they are to be encouraged. The disposition of the charges after plea discussion is a part of the criminal process which leads to the prompt and largely final disposition of criminal cases. And, in fact, more than 85% of the criminal cases nationwide are resolved in one form or another by a plea agreement.
 * * *
 And the same holds true when the government grants a witness immunity from prosecution in order to secure that witness's testimony about a criminal activity. Sometimes that's the only method available to uncover evidence of criminal activity and the only method available to bring the responsible participants to court to answer criminal charges. Tr. 736-37.
 
 
 [4]
 The trial court explained the dangers associated with using testimony from witnesses who have entered plea agreements at page 735-36 of the trial transcript:
 Now, in this case there was also evidence that some of the alleged accomplices and that other witnesses made plea agreements with the government under which they received additional advantages. For example, a witness who was using drugs, addictive or otherwise, during the time that he or she testified or a witness who has been promised that he or she will not be charged or prosecuted, or a witness who hopes to gain favorable treatment in his or her own criminal case, may have a reason to make a false statement because that person wants to strike a good bargain with the government. And you may consider these agreements, and you can also properly consider the witness's hopes as to future advantage in judging their credibility as well.
 Now, with respect to these witnesses, particularly keep in mind in judging their testimony and credibility that the government does have the power to confer or withhold future advantages depending upon the value and extent of their cooperation. So you have to look at their testimony with particular care, although that fact does not mean in and of itself that they are to be considered to be lying. It simply means that you have to look at their testimony very carefully. Also keep in mind that the fact that a witness or an accomplice has pleaded guilty to a crime or has been convicted of a crime is not evidence in and of itself of the guilt of any other person including, of course, the defendants here on trial.
 
 
 [5]
 Federal Rule of Evidence 106 reads in pertinent part:
 When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him at that time to introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.
 
 
 [6]
 Appellant relies on United States v. Gramlich, 551 F.2d 1359 (5th Cir.), cert. denied, 98 S.Ct. 201 (1977) for his contention that there were no allegations contained in the affidavit which linked the appellant's Audra property to criminal activities. Unlike Gramlich, here the search was for the person of Ralph Timms, believed to be Ralph Shuck, and we believe the affidavit is sufficient to justify the search of the property owned by Ralph Shuck