UNITED STATES of America

v.

Rachel FRANKEL and Elizabeth Mastropierro.

Crim. No. 90–0081–GHR.

United States District Court, District of Columbia.

May 15, 1990.

Opinion on Motion in Limine May 31, 1990.

Eric Dubelier, Asst. U.S. Atty., Washington, D.C. for plaintiff.

John M. Copacino, Aurie T. Hall, Georgetown Crim. Justice Clinic, Washington, D.C. for defendants.

Richard Seligman, Washington, D.C.

## ORDER

REVERCOMB, District Judge.

This matter is before the Court pursuant to the defendants' motion to dismiss on the ground that the transfer of their case from the Superior Court of the District of Columbia ("Superior Court") to the United States District Court for the District of Columbia ("District Court") violates their fifth amendment due process rights and is a result of prosecutorial vindictiveness.

### A. *Background*

On January 31, 1990, the defendants were arrested for allegedly throwing blood on the United States Capitol building. On February 1, 1990, they were arraigned in Superior Court and charged with a misdemeanor offense, Defacing Public Property, in violation of D.C.Code § 22–3112.1. This statute carries a penalty of a fine not less than $250 or more than $5000 or imprisonment for a period not to exceed 1 year, or both. D.C.Code § 22–3112.4.

On February 20, 1990, Dan Seikaly, an Assistant United States Attorney assigned to the Transnational and Major Crimes Unit, called Richard Seligman, the attorney who then was representing both defendants. Seikaly apprised Seligman that the United States Attorney's Office planned to indict the defendants on felony charges in District Court. Seikaly further informed Seligman that the Sentencing Commission Guidelines ("the Guidelines") in effect in the District Court provided for probation if

the defendants entered guilty pleas but that the defendants would face a minimum of two months and a maximum of seven months in jail if they were convicted after a trial on the felony charges. Seikaly also showed Seligman a resolution that was introduced in Congress on February 20, 1990, which was captioned "Expressing the Sense of Congress that the demonstrators who threw blood on the Capitol and the White House should be charged with a felony." This resolution concluded with the statement that "[t]he demonstrators should be prosecuted to the fullest extent of the law and be charged with a felony."

On February 21, 1990, a complaint was issued in District Court charging the defendants with one count of Depredation of Property of the United States in violation of 18 U.S.C. § 1361. The penalty for violating 18 U.S.C. § 1361 is a fine of not more than $10,000 or by imprisonment for not more than ten years, or both. On February 22, 1990, the misdemeanor cases were dismissed in Superior Court over the objection of the defendants based on due process violations and with offers by the defendants to enter pleas of guilty to the misdemeanor charges. On March 8, the defendants were arraigned before this Court and charged with violating 18 U.S.C. § 1361.

### B. *Due Process*

■ The defendants contend that the transfer violates their due process rights under the fifth amendment because under the Guidelines the government can determine with precision what a sentence will be and exploit this knowledge by discouraging the defendants from exercising their right to a jury trial. *See United States v. Holland*, 729 F.Supp. 125, 131 (D.D.C.1990); *United States v. Roberts*, 726 F.Supp. 1359, 1369 (D.D.C.1989).

The defendants' argument based on the facts of the instant case is without merit. The specific harm or technical advantage which is implicated by the Guidelines is that a prosecutor may use the threat of transfer to coerce a guilty plea in Superior Court.[1] However, on February 20, when the prosecutor informed defense counsel that the defendants would be indicted in District Court, he further specifically apprised defense counsel that the Superior Court charges would be dismissed and the defendants would not be permitted to plead guilty to the original charges. Moreover, the prosecutor further told the defense counsel that no plea offer was authorized to the federal charges at that time. If the government were in fact attempting to deny the defendants a public forum and jury trial then all reason would suggest that the government would have pursued the opportunity to exercise its technical advantage, accept the pleas, and close the matter as a success. The facts of the instant case are far removed from the cases in which a prosecutor tells the defense counsel that if the defendant does not immediately plead guilty in Superior Court then the case will be transferred to District Court where more severe penalties will be imposed under the Guidelines or pursuant to mandatory minimums. Accordingly, this Court finds that any suggestion that the government was exercising its knowledge of the Guidelines simply to force the defendants from proceeding with a trial is belied by the facts of the record. When the government could have accepted guilty pleas and avoided a public trial it unequivocally rejected the opportunity; there was no exercise of any technical advantage which implicated the defendants' constitutional rights.

### C. *Prosecutorial Vindictiveness*

■ The defendants further contend that the increase in charges and the transfer

---

**1.** The defendants attempt to argue that the government's ability to determine the precise sentence under the Guidelines in and of itself is a "technical advantage" and a violation of due process. This Court disagrees. The government can hardly be denying the defendants' due process rights simply by its knowledge of the law and apprising the defense counsel accord-

ingly. Rather, a denial of due process arises only where the prosecutor determines under the Guidelines what the more severe sentence will be in District Court and uses this information to threaten defendants with a transfer to District Court if they fail to plead guilty in Superior Court.

constitute prosecutorial vindictiveness. Actions by the prosecution are "vindictive" when the government acts against a defendant after a defendant's exercise of constitutional rights. *See United States v. Goodwin*, 457 U.S. 368, 372, 102 S.Ct. 2485, 2488, 73 L.Ed.2d 74 (1982). The Court of Appeals for the District of Columbia Circuit has held that there is a presumption of prosecutorial vindictiveness when the prosecutor increases charges after the defendant has exercised a legal right if there are additional facts that, together, create a "realistic likelihood of vindictiveness." *United States v. Meyer*, 810 F.2d 1242, 1246, *vacated*, 816 F.2d 695, *reinstated on reconsideration en banc sub nom Bartlett on Behalf of Neuman v. Bowen*, 824 F.2d 1240 (D.C.Cir.1987), *cert. denied*, 485 U.S. 940, 108 S.Ct. 1121, 99 L.Ed.2d 281 (1988). Factors which may support a presumption of vindictiveness when a prosecutor increases charges after the defendant asserts constitutional rights include: (1) the defendant had no notice that this increase might occur and (2) the defendant's own conduct after the initial charging decision did not give the government "a legitimate reason to enhance the charges." *Id.* Once a presumption of vindictiveness exists, the burden of presenting evidence then shifts to the government to justify the action in question. *Id.* at 1245.

■ This Court finds that the action of the government does not rise to a presumption of vindictiveness. Although the charges were enhanced to a felony when the government transferred the case from the Superior Court to the District Court, no additional facts or circumstances exist to support a finding of a "realistic likelihood of vindictiveness."

In the instant case, the defendants contend that the motive of the government in transferring the case to the federal court was to

> severely discourage the defendants from choosing to exercise their constitutional right to a jury trial. The prosecutor calculated the sentences [under the Guidelines] that the defendants would receive in federal court before transferring them, and stated that they would be sentenced to probation if they entered pleas but that they would be incarcerated if they exercised their right to trial.

As discussed previously, the government's refusal to consider or accept pleas by the defendants for the misdemeanor charges in the Superior Court belies any inference that the government's motive for the increase of charges and the transfer was to retaliate against the defendants or to force them into a plea posture at a subsequent point in the proceedings. Moreover, although the prosecutor stated that the defendants would be incarcerated for two to seven months pursuant to the Guidelines if they were found guilty of the felony after a trial in District Court, the fact of the matter is that the defendants could have received a similar—if not greater—term of incarceration if they were found guilty of the misdemeanor after a trial in Superior Court. Under the misdemeanor charge in Superior Court the defendants could have received up to a year of imprisonment. Although a term of imprisonment could not be predicted in the Superior Court, one of the defendants in the instant case has a prior record which would almost certainly be considered by the sentencing judge. The defendants would be speculating to assume that they would not receive prison terms if they were convicted of the misdemeanors in the Superior Court.

Although the defendants' own conduct after the initial charging decision gave no reason to increase the charges and transfer the case, the fact is that the true extent of the damage caused by the defendants' alleged conduct was not determined until after the initial charging decision was brought. On February 16, 1990, Seikaly met with representatives of the United States Capitol Police to discuss the future handling of cases that are factually similar to the instant case. At this meeting, for the first time, Seikaly was shown photographs of the damage that was caused by the alleged actions of the defendants. Seikaly was informed that despite repeated efforts the blood stains could not be removed and the cost of repairs was estimated at six thousand dollars.

Furthermore, the fact that Congress adopted a resolution specifically calling for felony charges against the defendants suggests, if anything, simply that the U.S. Attorney's Office was responding to the outrage of the victims of the defendants' alleged crime and *not* to the fact that the defendants were exercising their constitutional right to a trial. The government was certainly entitled to consider the resolution of Congress as one of the grounds for increasing the charges against the defendants and transferring the case to District Court. As the Supreme Court provided in *Goodwin,*

> There is good reason to be cautious before adopting an inflexible presumption of prosecutorial vindictiveness in a pretrial setting. In the course of preparing a case for trial, the prosecutor may uncover additional information that suggests a basis for further prosecution *or he simply may come to realize that information possessed by the State has a broader significance.* At this stage of the proceedings, the prosecutor's assessment of the proper extent of prosecution may not have crystallized.

> \* \* \* \* \* \*

> *A prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution.* An initial decision should not freeze future conduct. As we made clear in *Bordenkircher* [*v. Hayes,* 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604], the initial charges filed by a prosecutor may not reflect the extent to which an individual is legitimately subject to prosecution.

457 U.S. at 381–82, 102 S.Ct. at 2492–93. The fact that the defendants' alleged conduct was in response to certain federal policies does not diminish the societal interest in prosecution based on the impact of the alleged crime involving damage to public property; a meaningful exercise of political protest by an individual involves the acceptance of all consequences attendant to his or her actions, including the harm caused to the victims, when criminal statutes are willfully violated.

Accordingly, this Court finds that there are no facts or circumstances which, together with the increase of charges and transfer of the case, create a presumption of prosecutorial vindictiveness.

It hereby is

ORDERED that the defendants' motion to dismiss be, and the same hereby is, DENIED; and it is further

ORDERED that trial is scheduled to commence on May 31, 1990 at 10:30 a.m.; and it is further

ORDERED that the parties will submit voir dire questions and jury instructions by May 29, 1990.

## ON MOTION IN LIMINE

This matter is before the Court pursuant to defendant Frankel's motion in limine for leave to present evidence in support of the necessity defense.

The defendant contends that she discharged human blood on the Capitol steps in order to call attention to the fact that homeless people were dying because there was no affordable housing available.

In order to invoke the necessity defense the defendant must establish: (1) that he was faced with a choice of evils and chose the lesser evil; (2) that he acted to prevent imminent harm; (3) that he reasonably anticipated a causal relation between the conduct and the harm to be avoided; and (4) that there were no legal alternatives to violating the law. *See United States v. Aguilar,* 871 F.2d 1436 (9th Cir.1989).

The defendant can cite this Court to no caselaw in which courts have allowed the necessity defense as it relates to political actions. Indeed, on the contrary, the courts have rejected such a defense in the context of criminal conduct pursued for political ends. The grounds on which these courts have relied in rejecting the necessity defense are that there is no causal relationship between the conduct and the harm to be avoided, *see, e.g., United States v. Dorrell,* 758 F.2d 427 (9th Cir.1985); *United States v. May,* 622 F.2d 1000 (9th Cir.1980),

and that there are legal alternatives to violating the law. *See, e.g., United States v. Montgomery,* 772 F.2d 733 (11th Cir. 1985); *United States v. Quilty,* 741 F.2d 1031 (7th Cir.1984); *United States v. Seward,* 687 F.2d 1270 (10th Cir.1983).

In the instant case this Court finds the caselaw recited above persuasive. First, as to the causality test, there is simply no reasonable nexus that can be argued between the throwing of blood on the Capitol steps and the provision of housing to the homeless. Second, as to the availability of alternative legal means, a plethora of opportunities existed. For example, the defendant could have directly contacted public officials with information about the homeless or solicited private funds to provide the construction of affordable housing. No plausible grounds exist on which to argue that throwing blood on the steps of the Capitol was a more viable means than these legal opportunities to solve the homeless problem.

Accordingly, it hereby is

ORDERED that the defendant Frankel's motion in limine for leave to present evidence in support of the necessity defense be, and the same hereby is, DENIED.