**UNITED STATES of America, Plaintiff,**

v.

**Margaret Mary BRODHEAD and Thomas P. Lewis, Defendants.**

**Crim. No. 87–284–WD.**

United States District Court,
D. Massachusetts.

May 23, 1989.

Asst. U.S. Atty. Martin F. Murphy, Boston, Mass., for plaintiff.

Lee D. Goldstein, Goldstein, Pressman & Hiller, Cambridge, Mass., for defendants.

## MEMORANDUM AND ORDER

WOODLOCK, District Judge.

This is an appeal by two of three defendants from convictions before a magistrate on charges they violated 18 U.S.C. §§ 1361 and 1382 which make it a crime knowingly to enter military premises for an unlawful purpose, and to depredate United States Naval property. Margaret Mary Brodhead, Thomas P. Lewis, and Daniel Ethier[1] were each sentenced to six months' imprisonment, the execution of which was suspended, and six months' probation, during which 100 hours of community service was to be a condition of probation.

1. Defendant Ethier, who pled nolo contendre, is not a party to this appeal.

## I

On the morning of August 6, 1987, the forty-second anniversary of the bombing of Hiroshima, the defendants, calling themselves "Transfiguration Plowshares," entered the South Weymouth Naval Air Station through a hole dug under the fence. They came to the base "to celebrate the transfiguration of Christ" and to remember Hiroshima, by "symbolically disarm[ing] carriers of nuclear first strike weapons and the nuclear first strike arsenal and part of the interventionary arsenal through a nonviolent act of symbolic disarmament." Transcript at I–124.

The defendants placed a cross on the fence at the point at which they had entered the base, and once within the perimeter of the base, they poured their blood on a P–3 Orion fixed-wing aircraft and a Navy SH–2 Seasprite helicopter. They then dented the bomb-bay doors of the P–3 Orion with a hammer, and hung protest banners and pictures of victims of Hiroshima on the planes. After being discovered by a guard, the defendants were placed under arrest.

## II

The case was tried without a jury before Magistrate Alexander. Before trial, the parties agreed to provide a list of proposed witnesses and a short summary of the testimony of each. The defendants filed a list of twelve expert witnesses together with two memoranda setting forth their justification and international law defenses.

In response, the government filed a motion *in limine* seeking to exclude these defenses on the ground that the defendants were unable to adduce the essential elements. The government further requested the court to order the defendants to submit an offer of proof regarding the proffered defenses. This the Magistrate did. The defendants then filed a written offer of proof, preserving their constitutional objections to the order. The Magistrate allowed the government's motion, ruling that the offer of proof failed to establish a basis upon which the affirmative defenses could rest. The defenses were subsequently excluded from the trial. After trial, the Magistrate found that the government had met its burden, proving the defendants' guilt beyond a reasonable doubt, and she entered convictions for all three defendants.

## III

### *The Role of the Motion in Limine*

The motion *in limine* originated with attempts to prevent prejudicial evidence from interfering with a fair and impartial jury verdict in civil litigation. *See* Colbert, *The Motion in Limine in Politically Sensitive Cases: Silencing the Defendant at Trial,* 39 Stan.L.Rev. 1271, 1276 (1987). The general approach among courts and commentators was that the motion *in limine* "should be used, if used at all, as a rifle and not as a shotgun, pointing out the objectionable material and showing why the material is inadmissible and prejudicial." *Id.* at 1277 (citing *Lewis v. Buena Vista Mutual Insurance Assoc.,* 183 N.W. 2d 198, 201 (Iowa 1971)).

During the 1960's, however, use of the motion *in limine* expanded to become a prosecutorial tool for excluding evidence perceived to be irrelevant or prejudicial to the government's case in criminal trials. *Id.* at 1282. The trend in the direction of expansion appears to be continuing. Prosecutors "have begun to test the outer limits of judicial receptivity by using the motion to exclude entire defenses they regard as unduly prejudicial and irrelevant to the charges against the accused." *Id.* at 1283.

Rulings which preclude, as a matter of law, the presentation at trial of affirmative defenses have been approved by a number of federal circuits. *See, e.g., United States v. Montgomery,* 772 F.2d 733, 736 (11th Cir.1985) (in order for defense to be submitted to jury, defendants must convince judge there is sufficient evidence to prove essential elements of defense); *United States v. Dorrell,* 758 F.2d 427, 430 (9th Cir.1985) ("we have in the past allowed the district court to determine the admissibility of the necessity defense by motions *in limine*"); *United States v. Seward,* 687 F.2d 1270, 1276 (10th Cir.1982), *cert. de-*

*nied,* 459 U.S. 1147, 103 S.Ct. 789, 74 L.Ed. 2d 995 (1983) (trial judge did not abuse discretion in pretrial consideration of necessity defense through motion *in limine* ).[2]

■ In ruling on motions *in limine,* the federal courts have also held that it is appropriate to require a defendant to submit an offer of proof to establish whether the evidence is sufficient as a matter of law to support the proffered defense. *See, e.g., Montgomery,* 772 F.2d at 736; *Dorrell,* 758 F.2d at 430; *Seward,* 687 F.2d at 1273. The constitutional right of the defendant to a fair trial is not diminished if the defendant is precluded from raising defenses for which she can present no supporting evidence at all. *Cf. United States v. Kabat,* 797 F.2d 580, 591 (8th Cir.1986), *cert. denied,* 481 U.S. 1030, 107 S.Ct. 1958, 95 L.Ed.2d 530 (1987) (when there is no evidence to support a defense, it is appropriate to preclude it as a matter of law).

Although the First Circuit has not explicitly ruled on the scope of the motion *in limine* in criminal cases, the Magistrate's ruling here—insofar as she considered the adequacy of defendants' defenses prior to trial and required an offer of proof—is in keeping with the general trend in the federal courts.

Many of the concerns voiced about the breadth of the motion *in limine* touch upon the role of the jury in our judicial system. An accused is to be judged by her peers and the lens through which members of the jury view the actions of the defendant should be neither overly focused nor distorted by a trial judge. Those considerations are not present in this case, which was not tried to a jury, and the propriety of the Magistrate's orders are thus not to be judged by those concerns. *Cf. United*

States *v. Cottier,* 759 F.2d 760, 762–63 (9th Cir.1985) (magistrate's granting of motion *in limine* precluding evidence of necessity defense affirmed on appeal); *United States v. Lowe,* 654 F.2d 562, 564 (9th Cir.1981) (presentation of defenses disallowed as matter of law after offer of proof in bench trial).

Finding no valid objection to the use of motion *in limine* procedure in this case, I now turn to a discussion of the adequacy of the defenses themselves.

## IV

### A. *The Necessity Defense*

In order successfully to assert a defense in a criminal trial, "[i]t is sufficient that the defendant have shown an 'underlying evidentiary foundation' as to each element of the defense, 'regardless of how weak, inconsistent or dubious' the evidence on a given point may seem." *United States v. Kabat,* 797 F.2d at 590–91 (quoting *United States v. Goss,* 650 F.2d 1336, 1345 (5th Cir.1981)). Federal courts have not been accommodating to political necessity arguments, however, and have generally precluded their presentation on grounds that they fail to raise any "underlying evidentiary foundation."

To prove a common law defense of necessity, the defendants must be able to show that they

reasonably believed that their action was necessary to avoid an imminent threatened harm, that there [were] no other adequate means except those which were employed to avoid the threatened harm, and that a direct causal relationship may [have been] reasonably anticipated be-

**2.** State courts have generally expressed less enthusiasm for the expansion of the motion *in limine,* preferring instead to consider the legal sufficiency of a defense only after evidence at trial. These state courts have focused their analysis on the presumption of innocence and on a defendant's right to present a defense. *See, e.g., Commonwealth v. O'Malley,* 14 Mass. App.Ct. 314, 323, 439 N.E.2d 832, *appeal denied,* 387 Mass. 1102, 440 N.E.2d 1177 (1982) (court rejected motion *in limine* to preclude duress defense in prison escape); *People v. Brumfield,*

72 Ill.App.3d 107, 113, 28 Ill.Dec. 422, 426, 390 N.E.2d 589, 593 (1979) (motion *in limine* should be used with caution, especially in criminal cases); *State v. Quick,* 226 Kan. 308, 312, 597 P.2d 1108, 1112 (1979) (motion *in limine* must be narrow, pinpointing prejudicial material or evidence, as well as specific basis for exclusion or admission); *Lewis v. Buena Vista,* 183 N.W.2d at 200–01 (civil case) (motion *in limine* not ordinarily to be used to choke off entire defense; parties should not be prevented from trying to prove their contentions).

tween the action taken and the avoidance of the harm.

*United States v. Cassidy*, 616 F.2d 101, 102 (4th Cir.1979). *See also United States v. Bailey*, 444 U.S. 394, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980) (defense of necessity recognized when defendant reasonably believed criminal conduct was necessary to prevent a more serious harm, and when no reasonable legal alternative existed).

This is the analysis to which political necessity defenses have been subjected, and they have consistently failed to pass muster. *See* Note, *The State Made Me Do It: The Applicability of the Necessity Defense to Civil Disobedience*, 39 Stan.L.Rev. 1173, 1173–78 (1987). Federal courts that have addressed the question have "consistently held that arguments of justification and necessity are insufficient to establish a defense to a violation of 18 U.S.C. § 1382," the statute under consideration here. *U.S. v. Cottier*, 759 F.2d at 763 (citations omitted).

In the instant case, the defendants sought to introduce opinion evidence that legal, and even political, alternatives to criminal activity were insufficient to deter or change what the defendants consider to be illegal American nuclear armament.[3] This is not enough to sustain a justification defense. The Seventh Circuit has expressed the view that it is "impossible" to argue that there are not reasonable alternatives to violating the law when "[t]here are thousands of opportunities for the propagation of the anti-nuclear message: in the nation's electoral process; by speech on public streets, in parks, in auditoriums, in churches and lecture halls; and by the release of information to the media, to name only a few." *United States v. Quilty*, 741 F.2d 1031, 1033 (7th Cir.1984).

These other alternatives may not prove sufficiently persuasive to lead to implementation of the defendants' views. But success is not the measure. In any event, the defendants in this case offered no specific evidence that they were unable to resort to the political process or that they had even attempted all avenues of persuasion short of criminal acts to deliver their message.

A "vital element" of the necessity defense is that "the harm to be avoided must be so imminent that, absent the defendant's criminal acts, the harm is certain to occur." *United States v. Kabat*, 797 F.2d at 591 (citing *Bailey*, 444 U.S. at 410, 100 S.Ct. at 634). The defendants have also failed to establish this element. The defense "was never intended to excuse criminal activity by those who disagree with the decisions and policies of the lawmaking branches of government." *Id.* The courts should not engage in "making a negative political or policy judgment" about "the course of action chosen by elected representatives." *Id.*

The Magistrate's decision to preclude presentation of this defense was correct as a matter of law.

### B. *International Law: The Nuremberg Defense*

Like the necessity defense, the defense based on international law must fail. Prior to trial the defendants attempted to assert a "defense" based on the Nuremberg trials after World War II. This "Nuremberg defense" is designed to excuse individuals who violate domestic law in order to prevent their government from violating international law. Federal courts that have considered the availability of this defense in the nuclear protest context have uniformly rejected it. *United States v. Montgomery*, 772 F.2d at 737; *United States v. Lowe*, 654 F.2d at 566–67; *United States v. May*, 622 F.2d 1000, 1009 (9th Cir.), *cert. denied*, 449 U.S. 984, 101 S.Ct. 402, 66 L.Ed.2d 247 (1980).

The Eleventh Circuit in *Montgomery*, 772 F.2d at 737, criticized the defendants in fairly strong language for "misperceiv[ing] the persons for whom such a Nuremberg 'defense' is appropriate." The court asserted that the defendants were

---

**3.** These suggestions are contained in the offers of proof submitted by Howard Zinn, Daniel Berrigan, and Francis Boyle.

"stand[ing] this doctrine on its head in arguing that a person charged with no duty or responsibility by domestic law may voluntarily violate a criminal law and claim that violation was required to avoid liability under international law." *Id.* at 738. For the same reason, I find the Magistrate was correct in her determination that the defense is unavailable to the defendants here.

## C. *The Crime–Prevention Defense*

■ A person who reasonably believes that a felony, or a misdemeanor amounting to a breach of the peace, is being committed, or is about to be committed, in her presence, may use reasonable force to prevent it. 1 W. LaFave & A. Scott, *Substantive Criminal Law* § 5.10(c), at 683 (1986). The defendants argue that their actions were justified because they were taken to prevent what the defendants reasonably believed was the imminent commission of a crime by the United States government.

■ Magistrate Alexander rejected this defense because the defendants were not "in the presence" of the alleged imminent criminal act. In fact, the defendants burrowed under the perimeter fence of the naval base in order to bring themselves into "the presence" of the planes. As the government has argued in its brief, "the crime prevention defense was intended to protect those who act because they find themselves in troubling circumstances, not those who go looking for trouble." Government's Brief at 17.

I have found only one reported case which considered the merits of the crime-prevention defense in the context of political protest. In *State v. Marley,* 54 Haw. 450, 509 P.2d 1095 (1973), the defendants were charged with violating a trespass statute by conducting a protest at the private offices of Honeywell Corporation in Hawaii. The court granted that "[r]easonable action, even if technically a violation of criminal statutes, if taken to prevent or

terminate the commission of a crime by another, is, in certain circumstances, completely defensible." *Id.* 509 P.2d at 1108. However, the court emphasized the "general rule that the criminal act ... must occur in the presence of defendants." *Id.* "A presence requirement," the court asserted, "is the concomitant of the 'immediate harm' requirement. The inevitable requirement of presence stands, even where the criminal acts done to prevent harm to self, others, or property do *not* involve force." *Id.* (emphasis in original).

The court acknowledged that there may be some "matters of intimate personal concern" which would weigh in favor of waiving the presence requirement, but it did not suggest what such matters might be. *Id.* The court in *Marley* did not consider the Honeywell protest to be such a matter, and neither is the case before the court here. The Magistrate correctly focused on the presence requirement, and her exclusion of the defense will be affirmed.

## V

■ The defendants have charged that the Magistrate erred in her verdict, because the government had failed to prove beyond a reasonable doubt that the defendants had the specific intent to violate 18 U.S.C. § 1361, in that they did not enter the base for an unlawful purpose. Thus, they argue, they could not have violated 18 U.S.C. § 1382.[4] The First Circuit, in interpreting 18 U.S.C. § 1382, has held that the prohibited "purpose" referred to in the statute "can consist of unauthorized entry itself, and that no 'specific intent,' in the strict sense, to violate the law or regulation prohibiting such entry need be shown." *United States v. Parrilla Bonilla,* 648 F.2d 1373, 1377 (1st Cir.1981). The court did require, however, that it be "shown that the defendant had knowledge that such entry was, in fact, prohibited." *Id.*

---

**4.** 18 U.S.C. § 1382 provides in part that "[w]hoever, within the jurisdiction of the United States, goes upon any ... naval ... station ... for any purpose prohibited by law or lawful regulation ... shall be fined not more than $500 or imprisoned not more than six months."

18 U.S.C. § 1361 provides in part that "[w]hoever willfully injures or commits depredation against any property of the United States, or of any department or agency thereof ... shall be punished...."

The government's proof that the defendants burrowed under a fence in the early morning hours, together with the defendants' statements that they were consciously disobeying laws they found to be illegal,[5] was sufficient for a rational factfinder to find beyond a reasonable doubt that the defendants knew their conduct—entering the base unlawfully—was prohibited.

■ The indictment in the instant case, however, charged that the defendants' unlawful purpose was "willfully to injure" and depredate government property in contravention of 18 U.S.C. § 1361. The defendants contend that "property" is "a bundle of rights entitled to be protected by law." Appellants' Brief at 39. Because the very existence of the planes they damaged is prohibited under international law, their argument goes, those planes are "contraband" and cannot be considered the "property" of the United States. The defendants argue, therefore, that they lacked the requisite *mens rea* to commit the offense charged.

The defendants' contention, while imaginative, is without merit. The fact that the Navy "exercised dominion and control over [the planes] and that they had been subject to the practical usage of [the] Government," is sufficient to establish a property right for purposes of 18 U.S.C. § 1361. *United States v. McCalvin*, 608 F.2d 1167, 1170 (8th Cir.1979). The defendants clearly knew that such dominion and control was being exercised by the government, and even "a good faith belief in the unconstitutionality of government action" does not negate that knowledge. *United States v. Boardman*, 419 F.2d 110, 114 (1st Cir. 1969), *cert. denied*, 397 U.S. 991, 90 S.Ct. 1124, 25 L.Ed.2d 398 (1970).[6]

Indeed, the issue here is not that the defendants did not *know* that the planes were government property, it is that they did not *agree* with the legal basis of such ownership. At trial, the defendants insisted that their disobedience stemmed not from an unawareness that the government imposed certain behavior on them, but rather from a higher law which declared the government's behavior to be unjust. Trial Transcript at 103–04, 109, 145.

The Second Circuit has embraced, as a "correct statement[ ] of the law," the proposition that "a good faith misunderstanding of the law may negate willfulness, but a good faith disagreement with the law does not." *United States v. Kraeger*, 711 F.2d 6, 7 (2nd Cir.1983). A showing of "awareness of legal obligation and a deliberate purpose not to comply" suffices to sustain a conviction despite a "bona fide belief in the illegality of the Government's conduct." *United States v. Boardman*, 419 F.2d at 114.

Magistrate Alexander correctly refused to enter a Judgment of Acquittal for the defendants.

## VI

The Magistrate's rulings on the motion *in limine* and her requirement that the defendants submit an offer of proof did not violate their constitutional rights to a fair trial and were not in error. The *in limine* submissions demonstrated that the proffered affirmative defenses were unfounded. A rational factfinder could have found, on the basis of the government's proof, that each element of the offense was proved beyond a reasonable doubt.

The convictions are hereby AFFIRMED.

---

5. *See, e.g.,* Trial Transcript at 104, 109, 145.

6. The instant case is distinguishable from the First Circuit's recent pronouncement on specific intent in *United States v. Sturm*, 870 F.2d 769 (1st Cir.1989). Dealing specifically with intent in the context of the Hobbs Act, *Sturm* held that the term "wrongful" in the statute "requires the government to prove, in cases involving extortion based on economic fear, that the defendant knew that he was not legally entitled to the property that he received." *Id.* at 774. In this case, it cannot be argued that the defendants thought they had a claim of right to the property in question, or that they thought that "ownership" of the property, in the sense of dominion and control, was in someone other than the government.