**State of Vermont v. Stephen Cram**

[600 A.2d 733]

No. 90-548

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed October 25, 1991

*Jeffrey L. Amestoy*, Attorney General, and *David E. Tartter*, Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*Robert Bensing*, Plattsburgh, New York, for Defendant-Appellant.

**Allen, C.J.** On November 20, 1989, defendant and five other individuals entered the grounds of a test firing range facility in Underhill, Vermont, and remained after notice against trespass had been communicated to them. Defendant's avowed purpose in entering was to prevent the testing by General Electric Company of "gatling guns" and, consequently, delay shipment of the guns to El Salvador, where they were being used by the military to shoot civilians. Defendant was charged with unlawful trespass under 13 V.S.A. § 3705(a)(1). At a pretrial status conference, and again in answer to a motion in limine by the State, the trial court ruled that defendant was barred from presenting defenses based on necessity and justification under international law. Defendant was convicted after a jury trial. Defendant argues on appeal that he was entitled to present both defenses to the jury. We affirm.

That part of defendant's offer of proof that is relevant to this opinion is as follows. The harm defendant was trying to avert was the killing of civilians by the El Salvadoran military. Killing was taking place in the city of San Salvador on the day defendant entered the Underhill facility, as well as on the days immediately preceding and following. Much of the killing was being committed with gatling guns. The gatling guns used by the El Salvadoran military were manufactured solely at the General Electric plant in Burlington. Every gun, gun barrel, and component that General Electric produces in Burlington is tested at the Underhill facility. The testing is intermittent. The El Salvadoran government had asked for additional arms from the United States government, and the United States government had agreed to send such arms. Further, the barrels on the gatling guns already in the El Salvadoran military's possession would have to be replaced because they warp with constant use. As defendant approached the Underhill facility, he heard guns being tested. The gun barrel he stood in front of was smoking. He was on the grounds of the facility for two and one-half hours, during which time no guns were tested.

## I.

A pretrial ruling on the admissibility of a defense based on necessity is proper. See *State v. Warshow*, 138 Vt. 22, 23–26,

410 A.2d 1000, 1001–02 (1979) (upholding trial court's pretrial denial of defendant's necessity defense because the offered evidence was insufficient); accord *United States v. Dorrell*, 758 F.2d 427, 430 (9th Cir. 1985); *Commonwealth v. Capitolo*, 508 Pa. 372, 378–79, 498 A.2d 806, 809 (1985). Where the facts pointed to in defendant's offer, taken as true, are insufficient to sustain the defense, the trial court should deny use of the defense. *Dorrell*, 758 F.2d at 430; *Capitolo*, 508 Pa. at 379, 498 A.2d at 809. Accordingly, the ruling below was proper if, taking the facts in defendant's offer as true, no reasonable juror could find that the requirements of the necessity defense were satisfied. Cf. *State v. Shotton*, 142 Vt. 558, 561, 458 A.2d 1105, 1106 (1983) (denial of instruction on necessity was improper where the jury could have concluded on the evidence presented that the requirements of the necessity defense were met).

Defendant bears the burden of proving the affirmative defense of necessity. *State v. Baker*, 154 Vt. 411, 419, 579 A.2d 479, 483 (1990). The elements of the necessity defense are:

(1) there must be a situation of emergency arising without fault on the part of the actor concerned;

(2) this emergency must be so imminent and compelling as to raise a reasonable expectation of harm, either directly to the actor or upon those he was protecting;

(3) this emergency must present no reasonable opportunity to avoid the injury without doing the criminal act; and

(4) the injury impending from the emergency must be of sufficient seriousness to outmeasure the criminal wrong.

*Warshow*, 138 Vt. at 24, 410 A.2d at 1001–02. Further, the necessity defense is not applicable if it has been legislatively precluded. "Determination of the issue of competing values and, therefore, the availability of the defense of necessity is precluded ... when there has been a deliberate legislative choice as to the values at issue." *Id.* at 27, 410 A.2d at 1003 (Hill, J., concurring). The second and third elements are governed by defendant's belief, and that belief must be reasonable. See *Shotton*, 142 Vt. at 560–61, 458 A.2d at 1106 (issue in necessity defense is whether actions were "reasonably conceived by [defendant] to have been a necessity"); 1 W. LaFave & A. Scott,

Substantive Criminal Law § 5.4, at 635–36 (1986) (to have defense of necessity, "[a]n honest (and, doubtless, reasonable) belief in the necessity of his action is all that is required . . . . The defendant's belief as to the relative harmfulness of the harm avoided and the harm done does not control, however.").

■ Implicit in the requirement that there be "no reasonable opportunity to avoid the injury without doing the criminal act" is an element of causation: doing the criminal act will avoid the injury. The actions are necessary only if the actor reasonably believes that they will avoid the injury. Without a belief that they will avoid the injury, the actions are by definition not necessary, as the belief can only be that the injury will persist and a criminal act will be committed. If an actor does not reasonably believe the action will avoid the injury, it is a gesture, not a necessity. It is not entitled to the protections of the necessity defense. "'An essential element of the so-called justification defenses is that a direct causal relationship be reasonably anticipated to exist between the defender's action and the avoidance of harm.'" *United States v. Seward*, 687 F.2d 1270, 1275 (10th Cir. 1982) (quoting *United States v. Simpson*, 460 F.2d 515, 518 (9th Cir. 1972)), *cert. denied*, 459 U.S. 1147 (1983); see *Dorrell*, 758 F.2d at 433 (same); *United States v. Cassidy*, 616 F.2d 101, 102 (4th Cir. 1979) (same); *Commonwealth v. Hood*, 389 Mass. 581, 593, 452 N.E.2d 188, 196 (1983) (denying necessity defense to defendants who trespassed in order to distribute literature opposing nuclear arms race because defendants "could not have reasonably expected their actions to abate the alleged danger directly"); *State v. Champa*, 494 A.2d 102, 105 (R.I. 1985) (denying necessity defense to defendants because it was "patently impossible" for defendants to demonstrate that "the act of spray-painting could reasonably be calculated to bring about an actual halt of all future production of missile components"); *Wilson v. State*, 777 S.W.2d 823, 825 (Tex. Ct. App. 1989) (denying necessity defense because no person could "reasonably anticipate that the seizure [of university president's office] would actually and directly *result* in the stopping of apartheid"); 2 P. Robinson, Criminal Law Defenses § 124(c), at 8 n.9 (supp. 1988) ("A defendant who violates the law in a manner that will not avert the harm [sought to be prevented] has simply not satisfied [a requirement of the necessity defense].").

Defendant's theory of causation is that by interfering with the testing of guns while he was on the range, he would delay the shipping of gatling guns or replacement gun barrels to El Salvador. By delaying the shipping, one less gatling gun would be fired, or one more civilian would successfully flee or hide, and, consequently, one life would be saved.

■ We find the uncertainty surrounding defendant's actions to be so great that no reasonable juror could conclude that defendant reasonably believed his actions would have a direct causal effect in preventing the killing of civilians in El Salvador. Defendant's offer demonstrates that at the time of his trespass he did not know whether the guns then being tested were to be sent to the government of El Salvador. In order for defendant to believe his actions *would* have a direct causal effect, he had to at least have known the likely result of his underlying act. Without this knowledge, the most that defendant could reasonably have believed is that his actions *could* have a direct causal effect. Such a belief does not suffice. "It is not enough that the actor believes that his behavior possibly may be conducive to ameliorating certain evils; he must believe it is 'necessary' to avoid the evils." Model Penal Code § 3.02 comment at 12 (1985); see *United States v. Schoon*, 939 F.2d 826, 830 (9th Cir. 1991) (necessity defense unavailable for indirect civil disobedience because the act is unlikely to abate the perceived harm or change congressional policy); *Dorrell*, 758 F.2d at 433 (defendant's necessity defense "fails because he has not established that his actions *would* bring about the ends he sought") (emphasis added); *United States v. May*, 622 F.2d 1000, 1008 (9th Cir.) (necessity defense not available to defendants "because there was no reasonable belief that a direct consequence of their actions *would* be the termination of the Trident program") (emphasis added), *cert. denied*, 449 U.S. 984 (1980).*

---

* This standard does not require that a defendant believe his actions will without fail avoid the injury. Consider the example of one speeding to take a badly wounded friend to a hospital. This person cannot reasonably believe that his act of speeding will without fail save his friend's life, as this certainty of belief cannot reasonably exist. He can, however, reasonably believe that his actions would have a direct causal effect in avoiding the harm. This driver knows the nature of his underlying act and that by speeding he will

Accordingly, the decision below to bar defendant's use of the defense of necessity was proper.

## II.

We also find proper the bar on defendant's alternative defense, that of justification based on international law. We do not take issue with defendant's contention that the killing of civilians would be in violation of international law applicable to El Salvador either by virtue of it being a signatory to various agreements or by "jus cogens." We do take issue, however, with defendant's contention that, having failed to satisfy the requirements of the necessity defense, he nevertheless had a privilege under international law to attempt to prevent the killing.

██ As interpreted by our federal courts, the privilege under international law to transgress domestic law exists only when domestic law requires the commission of an act that violates international law. See, e.g., *United States v. Kabat*, 797 F.2d 580, 590 (8th Cir. 1986), *cert. denied*, 481 U.S. 1030 (1987); *United States v. Montgomery*, 772 F.2d 733, 737–38 (11th Cir. 1985); *United States v. Brodhead*, 714 F. Supp. 593, 597–98 (D. Mass. 1989). As stated by the court in *Montgomery*, it "stand[s] this doctrine on its head [to argue] that a person charged with no duty or responsibility by domestic law may voluntarily violate a criminal law and claim that violation was required to avoid liability under international law." 772 F.2d at 738. Where, as here, domestic law did not require of defendant anything arguably criminal under international law, a privilege under international law was not available, and its use was properly denied.

## III.

In denying defendant a defense based on necessity, we do not make a judgment on the morality of his actions. We merely recognize that violation of the criminal law is not justified by necessity unless the strict requirements of that defense have been

---

reach the hospital faster. Defendant, as pointed out above, did not know whether he was interfering with the testing of guns bound for El Salvador or for the United States military. Without this knowledge, the most he could reasonably have believed was that his actions could, not would, have a direct causal connection.

met. Were we to relax the requirements of the necessity defense in accordance with our moral beliefs, we would turn the defense into an expression of our own view of morality. This is a result we must resist. Because defendant did not meet the requirements of necessity, his conviction must be affirmed.

*Affirmed.*