2010 VT 78

## State of Vermont v. Sue C. Thayer

[14 A.3d 231]

No. 08-415

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed August 20, 2010

Motion for Reargument Denied October 6, 2010

*Peter R. Neary*, Rutland County Deputy State's Attorney, Rutland, for Plaintiff-Appellee.

*Daniel M. Sedon* of *Law Office of Sedon & Ericson, PC*, Chelsea, for Defendant-Appellant.

¶ 1. **Burgess, J.** In this interlocutory appeal, defendant challenges the trial court's denial of her right to present a necessity defense to the jury. Defendant is charged with knowingly and unlawfully cultivating more than twenty-five marijuana plants in violation of 18 V.S.A. § 4230(a)(4). Before trial, defendant moved for a jury instruction on the defense of necessity, asserting she used marijuana medicinally for her son, whose wasting symptoms are recognized under the state's therapeutic use of cannabis act. 2003, No. 135 (Adj. Sess.), § 1; see 18 V.S.A. § 4472(2)(B). The trial court denied defendant's motion, holding (1) that she failed to establish a prima facie case on each of the elements required for a necessity defense, and (2) that the legislative law precluded the necessity defense in this case through its "deliberate choice as to the values at issue concerning the legal growth of marijuana." We granted defendant's request for interlocutory review of the trial court's ruling, and affirm.

¶ 2. The trial court accepted the following facts as true. In the summer of 2003, defendant, a Master Gardener, began growing marijuana on her property to treat her ailing son TT, who was battling leukemia. After several bone-marrow transplants and repeated bouts of chemotherapy, TT used marijuana to ease his nausea, improve his appetite, and eventually return to school. Although TT passed away in May 2005, defendant noted how effectively marijuana alleviated his symptoms. She continued growing marijuana to treat her youngest son, MT, who was experiencing wasting symptoms, including chronic nausea and loss of appetite, due to scarred kidneys resulting from a medical emergency when he was an infant. Marijuana greatly improved his condition.

¶ 3. Each summer since 2003, defendant grew marijuana outside of her home. In the spring, defendant would normally seed fifty-to-one-hundred plants indoors and select the most vigorous of those seedlings to plant outdoors in June. To ensure an adequate supply of marijuana, each season she grew fifty-to-seventy percent more plants than she needed to compensate for natural crop losses.

¶ 4. On August 2, 2007, following a tip from Vermont's Marijuana Eradication Reduction Team, police seized thirty semi-mature marijuana plants growing in defendant's backyard. Defendant conceded that neither she nor her son were registered with the state, as required by statute, as patients or caregivers authorized to grow and use medicinal marijuana. See 18 V.S.A. §§ 4473-4474. The pending felony drug charge resulted.

■ ■ ¶ 5. Defendant argues the trial court erred in denying her request to present the affirmative defense of necessity. Recognized by this Court in both criminal and tort litigation, the necessity defense "admits the criminal act, but claims justification." *State v. Pollander*, 167 Vt. 301, 308, 706 A.2d 1359, 1363 (1997) (quotation omitted). It is a classic defense of "confession and avoidance." *State v. Warshow*, 138 Vt. 22, 24, 410 A.2d 1000, 1001 (1979). To avoid conviction, defendant need not refute the elements of the underlying felony drug charge, but bears the burden of proving by a preponderance of the evidence that her admitted criminal acts were necessary under certain circumstances defined by common law. *State v. Baker*, 154 Vt. 411, 419, 579 A.2d 479, 483 (1990). The immediate inquiry, however, is not whether the necessity defense

would have been persuasive, but whether the trial court erred in denying the jury the opportunity to consider the defense at all. Defendant needed only to make a prima facie presentation from which a "reasonable juror could find that the requirements of the necessity defense were satisfied" to be entitled to her requested instruction. *State v. Cram*, 157 Vt. 466, 469, 600 A.2d 733, 734 (1991).

¶ 6. In determining whether a reasonable juror could find that the elements of necessity were satisfied, we first examine the four requirements of the defense:

> (1) there must be a situation of emergency arising without fault on the part of the actor concerned;

> (2) this emergency must be so imminent and compelling as to raise a reasonable expectation of harm, either directly to the actor or upon those he was protecting;

> (3) this emergency must present no reasonable opportunity to avoid the injury without doing the criminal act; and

> (4) the injury impending from the emergency must be of sufficient seriousness to outmeasure the criminal wrong.

*State v. Shotton*, 142 Vt. 558, 560-61, 458 A.2d 1105, 1106 (1983) (citing *Warshow*, 138 Vt. at 24, 410 A.2d at 1001-02).

¶ 7. Defendant must make a minimally sufficient case for every element to be entitled to the instruction. *State v. Knapp*, 147 Vt. 56, 59, 509 A.2d 1010, 1011 (1986). Consequently, the trial court may deny a necessity defense instruction if it finds insufficient evidence for any one of the elements. See *Warshow*, 138 Vt. at 25, 410 A.2d at 1002 (finding trial court's denial of a necessity defense sound because defendants failed to show the danger was "imminent and compelling"). If the court finds that the facts offered by defendant, taken as true, are "insufficient to sustain the defense, the trial court should deny use of the defense." *Cram*, 157 Vt. at 469, 600 A.2d at 734. In the instant case, the trial court ruled correctly that defendant's proffer was insufficient to establish the third element of her defense: that she had no reasonable alternative except to violate the law. Since this failure is clear and

disposes of the entire question before the Court, we proceed directly to that analysis.

¶ 8. The third element of the necessity defense requires defendant to show that her emergency presented "no reasonable opportunity to avoid the injury without doing the criminal act." *Shotton*, 142 Vt. at 560-61, 458 A.2d at 1106. This element is "governed by defendant's belief, and that belief must be reasonable." *Cram*, 157 Vt. at 469, 600 A.2d at 735. Defendant must therefore present enough evidence to raise a question of fact as to whether she reasonably believed she had no opportunity to alleviate her son's symptoms without committing the outlawed act of growing more than twenty-five marijuana plants. See *Shotton*, 142 Vt. at 561, 458 A.2d at 1106 ("[T]he jury could have concluded that defendant reasonably believed she was confronted with a medical emergency . . . and that her need for treatment, as she conceived it to be, outweighed the criminal wrong of driving under the influence."). Since, before defendant's arrest, Vermont had legalized medicinal use of marijuana under certain circumstances and then expanded its exemption from criminal penalties, a brief look at the law's provisions lends guidance as to the reasonableness of defendant's conduct.

¶ 9. Three years before defendant's arrest, in May 2004, Vermont passed Public Act 135, "An Act Relating to Marijuana Use by Persons with Severe Illness." 2003, No. 135 (Adj. Sess.). Although the Act legalized therapeutic use of marijuana, the Legislature crafted its permission narrowly. Individuals wishing to grow marijuana must be "registered patients" with a qualifying medical condition, or assume the role of "registered caregiver" to grow for another qualified patient. 18 V.S.A. § 4472(6) & (7). The Act provided that marijuana grown for symptom relief may be cultivated only in a "secure indoor facility." *Id.* § 4472(8). It limited possession to "no more than one mature plant, two immature plants, and two ounces of usable marijuana." *Id.* § 4472(4) (2005). The Legislature did not alter its pre-existing penalties for more ambitious marijuana possession, including jail terms of up to five and ten years for cultivating more than ten and more than twenty-five plants, respectively. *Id.* § 4230(a)(3)-(a)(4). In 2007, the Legislature amended the Act to increase the cultivation limit to two mature plants and seven immature plants per grower, again leaving the felony penalties in place. 2007, No. 58, § 1; see 18

V.S.A. §§ 4472(5), 4230(a)(3), 4230(a)(4). Vermont law has thus required registered legal growers of medicinal marijuana to do so indoors, with a maximum of nine plants, since May 2004.

¶ 10. Defendant posits that her belief in the necessity of unlawful outdoor marijuana cultivation was reasonable because she needed to maintain a constant supply for her son. According to the proffer, defendant was "dismayed" to learn, in July 2007, of the indoor growing requirement of Vermont's amended medicinal marijuana law, which was, in her opinion, its "worst provision." In the four years during which defendant grew marijuana, she refused to grow indoors and failed to observe either the three or seven plant maximum. She insists that thirty plants were necessary to ensure an adequate supply of marijuana to compensate for "the constant risks of loss to frost, drought, too much rain, deer, woodchucks, moles, grouse, mold and disease" and argues that these outdoor growing problems necessitated planting substantially more marijuana than she would actually harvest. Defendant asserts that she was attempting to comply with Vermont's medicinal marijuana law just before her arrest, but lacked sufficient time after the 2007 amendments to research indoor growing or to build indoor growing facilities. Defendant's argument fails for two reasons.

¶ 11. First, defendant proffered nothing to actually demonstrate that indoor cultivation was impossible or impractical for her, or that it would not have cured the need to grow more marijuana than authorized by the statute.[1] Indeed, she makes no claim that she would still have had to grow more marijuana plants than the law allowed if growing indoors, safe from the uncertainties of nature. Moreover, defendant's assertion that she had no time to create a compliant indoor facility for growing marijuana is not reasonable, given over three years in which to do so. Vermont's

---

[1] In his dissent, Chief Justice Reiber submits that this reference to a lack of proof fails to credit defendant's filings with the trial court. We disagree. As the dissent points out, defendant did submit that the limit on outdoor planting "was particularly challenging," that indoor cultivation would take "two separate grow spaces" within the house, that "research was needed on both the equipment and techniques necessary" to grow indoors and the space would "need to be secure." *Post*, ¶ 23. Taking these recitations as true, but without further elaboration by defendant, none can lead to a reasonable conclusion that such presumed difficulties could not possibly or practically be resolved, or that they left defendant with no choice but to violate the law.

therapeutic marijuana law has required indoor growing since its original passage in 2004, and defendant admits to growing medicinal marijuana outdoors before and after this regulated legalization. Defendant had no evident intent to move her operation indoors before the amendment in 2007 and instead monitored the legislative process hoping outdoor cultivation would be authorized. On that record, it cannot be said that a reasonable juror could find that she had not had enough time in which to grow marijuana indoors before her arrest. That the exemption from prosecution was not applicable to her son's wasting condition until the 2007 amendment is of no moment since, according to defendant's explanation, it was the outdoor cultivation, rather than the child's illness, that necessitated her cultivation of marijuana in felony quantities for more than three years, eventually leading to her arrest and the instant charge.

¶ 12. Second, to the extent defendant justifies the violation based on her disagreement or disapproval of the law's provisions, this argument falls outside the scope of the necessity defense. "The necessity defense is generally not available to excuse criminal activity by those who disagree with the policies of the government." *Planned Parenthood of Mid-Iowa v. Maki*, 478 N.W.2d 637, 640 (Iowa 1991) (per curiam) (citing *United States v. Kabat*, 797 F.2d 580, 591 (8th Cir. 1986)). The Legislature enacted marijuana prohibitions, and enacted and amended the law to allow medicinal use of marijuana. While its specific provisions may have "dismayed" defendant and seemed to her "grossly inadequate and seemingly arbitrary," she is nonetheless bound — like the rest of us — to abide by the law. An emergency necessity to commit an act otherwise deemed a crime does not turn upon the rationality of the legislative choice. See *Pollander*, 167 Vt. at 308, 706 A.2d at 1363 (noting the necessity defense "emanates not from any state or federal constitutional imperative but rather from the common law"). There is no basis for the necessity defense outside of its essential common law elements. The element of having no reasonable alternative to the violation was not evident from defendant's submissions to the trial court.

¶ 13. Thus, assuming the truth of defendant's proffer, it was insufficient to establish this predicate third prong of the necessity defense. Since defendant's evidence failed to raise "legitimate factual issues relating to the defense of necessity," the jury needed no instruction on the defense. *Shotton*, 142 Vt. at 562, 458

A.2d at 1107 (citation omitted). Given defendant's failure to meet the prima facie showing requirement for her claimed necessity, our analysis ends without considering defendant's proffer in support of the remaining elements or the court's reliance upon legislative preclusion of the common law defense by virtue of the enactment of the medicinal marijuana exemption. We affirm the trial court's conclusion that defendant is not entitled to a necessity defense and remand the case for further proceedings.

*Affirmed and remanded.*

¶ 14. **Reiber, C.J.,** dissenting. Defendant's oldest son was diagnosed with leukemia in 2002, endured chemotherapy, radiation, and five bone-marrow transplants, and died in 2005. During the course of his illness, he grew and used marijuana to ease the side effects of cancer treatments. Meanwhile, defendant's younger son had a medical emergency when he was an infant. This left his kidneys scarred and led to chronic fatigue and severe nausea. Despite following all medical advice, he remained extremely ill. When he began using marijuana, however, he, like his older brother, experienced an increased appetite and, in turn, improved energy and vigor. Although marijuana is not a cure, it has relieved his worst symptoms. The State does not dispute that the son's already declining kidneys "will fail completely," and his chronic wasting disease will prove fatal.

¶ 15. The issue before the Court is simply this: what must defendant proffer before being entitled to a jury instruction on the necessity defense? In addressing this issue, the majority makes two related errors. First, it errs by conflating the burden of production with the burden of persuasion: the majority erroneously requires defendant to bear a greater burden than required to present her necessity defense to a jury. Although criminal defendants have the ultimate burden of persuasion in proving the necessity defense by a preponderance of the evidence, *State v. Baker*, 154 Vt. 411, 418-19, 579 A.2d 479, 483 (1990), the necessity defense should be submitted to a jury whenever a criminal defendant carries her burden of production by "establish[ing] a prima facie case on each of the elements of the affirmative defense." *Id.* at 414, 579 A.2d at 480. Where a criminal defendant offers proof supporting the elements of the defense, questions of reasonableness and credibility are for the jury to decide. See *State v. Shotton*, 142 Vt. 558, 561, 458 A.2d 1105, 1106

(1983). This brings us to the majority's second error, which is to usurp the jury's function by determining what course of action was reasonable for a mother whose son has a chronic illness. It is the jury's province to weigh the persuasiveness of the evidence and make determinations of credibility and reasonableness. Because defendant has offered sufficient proof on each element of the necessity defense, I respectfully dissent.

¶ 16. The necessity defense is one that typically should be heard by a jury and should not be excluded pretrial. See, e.g., *People v. Lovercamp*, 118 Cal. Rptr. 110, 116 (Ct. App. 1974) ("Whether any of the conditions requisite to [the necessity defense] exist is a question of fact to be decided by the trier of fact after taking into consideration all the surrounding circumstances."); *Commonwealth v. Hood*, 452 N.E.2d 188, 197 n.5 (Mass. 1983) ("[O]rdinarily a judge should *not* allow a motion which serves to exclude, in advance of its being offered, potential evidence of the defense. Since a judge is required to instruct on any hypothesis supported by the evidence, in most instances proffer of disputed matter at trial, ruled upon in the usual course, is more likely to be fair and result in correct rulings."); see generally *State v. Williams*, 2010 VT 77, ¶ 11, 188 Vt. 405, 9 A.3d 315 (recognizing "pitfalls in granting . . . broad pretrial motions" and suggesting that deferring rulings until trial may be the better practice); *State v. Dubois*, 150 Vt. 600, 602, 556 A.2d 86, 88 (1988) (noting that pretrial motions to exclude evidence should ordinarily be denied "when the trial court can conceive of a set of circumstances that would make the evidence admissible"). In my view, the State's arguments did not meet the high threshold required to have the necessity defense excluded pretrial, and the trial court therefore erred in making such a ruling.

¶ 17. The necessity defense may only be precluded pretrial where the facts in defendant's offer of proof, taken as true, cannot sustain the defense. *State v. Cram*, 157 Vt. 466, 469, 600 A.2d 733, 734 (1991). Here, defendant need only present sufficient evidence to "raise a question of fact for the jury" as to whether it was "reasonably conceived by her to have been a necessity" to grow marijuana plants. *Shotton*, 142 Vt. at 561, 458 A.2d at 1106. If a reasonable juror could conclude that each element of the necessity defense was present, the trial court's decision must be overturned. *Id.* at 561-62, 458 A.2d at 1107. Although deficiencies in defendant's evidence may appear at trial, defendant proffered sufficient

proof on each element, and, as a result, the trial court's foreclosure of such evidence constituted reversible error. See *id.*; see also, e.g., *State v. Vanderlas*, 145 Vt. 135, 138, 483 A.2d 263, 265 (1984) (reversing trial court for failing to instruct jury on affirmative defense when defendant "made a sufficiently concrete and specific offer of proof" on each element so as "to raise a question for the jury").

¶ 18. The necessity defense has four prongs:

(1) there must be a situation of emergency arising without fault on the part of the actor concerned;

(2) this emergency must be so imminent and compelling as to raise a reasonable expectation of harm, either directly to the actor or upon those he was protecting;

(3) this emergency must present no reasonable opportunity to avoid the injury without doing the criminal act; and

(4) the injury impending from the emergency must be of sufficient seriousness to outmeasure the criminal wrong.

*State v. Warshow*, 138 Vt. 22, 24, 410 A.2d 1000, 1001-02 (1979).

¶ 19. The issue of whether the trial court properly excluded the necessity defense is a pure question of law. See *State v. Squires*, 147 Vt. 430, 431, 519 A.2d 1154, 1155 (1986) (per curiam). We review questions of law de novo. *In re Beckstrom*, 2004 VT 32, ¶ 9, 176 Vt. 622, 852 A.2d 561 (mem.). Defendant made the following offer of proof regarding the required elements of the necessity defense.

¶ 20. With respect to the first prong, requiring the situation to be an emergency, defendant asserted in her submission to the trial court that her son has a progressive disease with symptoms of wasting and that conventional medical approaches and dietary modifications have not worked.[2] Defendant offered her son's physician to testify about the progression of his disease and its severe consequences, including the prognosis that he will eventu-

---

[2] The first prong of the defense requires that the emergency not be the fault of the defendant claiming necessity. *Warshow*, 138 Vt. at 24, 410 A.2d at 1001. Here, it is undisputed that the son's disease is not the fault of defendant.

ally experience kidney failure. The trial court held that this situation was not an "emergency," but failed to explain why this was so. If the serious illness of a child, which ultimately leads to death, is not an emergency, what is? Because defendant offered reasonable proof that this was a critical health issue for her child, the jury should have had the opportunity to determine whether it reached the level of an emergency.

¶ 21. Defendant also offered proof concerning her belief of the imminence of the harm, the second prong. The trial court stated that because the harms sought to be avoided were long-term, the danger was not imminent enough to warrant defendant's actions. The court cited *State v. Warshow* for this proposition. 138 Vt. 22, 410 A.2d 1000. But our holding in *Warshow* depended upon facts that are not present here. In *Warshow*, the defendants protested outside a nuclear power plant; when asked to leave, they refused and were arrested. Before trial, they sought to present evidence regarding the dangerousness of the plant — witnesses to testify regarding the dangers of low-level radiation, nuclear waste, and nuclear accidents — which they argued would establish the necessity defense. The trial court did not allow the defense, in part because the defendants did not sufficiently demonstrate imminent danger. The defendants argued that they acted to foreclose the *chance* or *possibility* of accident. On appeal, this Court held that such dangers were not imminent enough to justify criminal activity. *Id.* at 25, 410 A.2d at 1002. There was no evidence of an impending accident and no evidence of past accidents from which to draw an inference that there may be an imminent danger. We held that "[t]his defense cannot lightly be allowed to justify acts taken to foreclose *speculative* and *uncertain* dangers. Its application must be limited to acts directed to the prevention of harm that is reasonably certain to occur." *Id.* (emphases added); see also *State v. Chisholm*, 882 P.2d 974, 977 (Idaho Ct. App. 1994) ("A mere possibility of harm that may occur sometime in the future is insufficient."); *Commonwealth v. Leno*, 616 N.E.2d 453, 456 (Mass. 1993) (refusing to recognize defense where defendants did not show that danger was "clear and imminent, rather than debatable or speculative").

¶ 22. Here, by contrast, defendant proffered ample proof that the outcome of her son's chronic kidney disease, without treatment, was anything but speculative or uncertain. Her son was already experiencing severe nausea, weight loss, and declining

vigor. He was increasingly less able to build his strength and resist the disease. The emergency's imminence need raise only a *reasonable expectation* of harm. *Warshow*, 138 Vt. at 24, 410 A.2d at 1001. Here, a juror could reasonably conclude that defendant had a reasonable belief that her son would die if she did not provide him with the only effective treatment she and her doctor had found — marijuana.

¶ 23. Defendant also proffered sufficient proof regarding the third prong, which the majority latches onto as being dispositive of the issue. The majority today holds that no reasonable juror could find that defendant reasonably believed that there were no other options in treating her son's disease. *Ante*, ¶ 11. The problem with the majority's conclusion is that it involves making a credibility assessment, one that properly lies with the jury. The majority states that it is unreasonable to believe that defendant did not have time to create a compliant indoor growing facility in the three years that the medical-marijuana law was in place. The Court, however, must "take[] as true" defendant's offer of proof when making a determination regarding what a reasonable juror could find. *Cram*, 157 Vt. at 469, 600 A.2d at 734. The majority wrongly makes a determination as to the reasonableness of defendant's justification and suggests that defendant "proffered nothing to actually demonstrate that indoor cultivation was impossible or impractical for her." *Ante*, ¶ 11. This is a mischaracterization. In fact, the trial court had a memorandum before it in which defendant stated that "[t]he limit on [the number of] plants . . . was particularly challenging from a technical standpoint." She elaborated that "essentially two separate grow spaces would have to be created in the house," research was needed on both the equipment and techniques necessary to grow the plants indoors, the facility would need to be secure, and her son would need to have "continued access to a secure, safe supply of marijuana." The trial court had to take defendant's statements about the difficulty of building the indoor facility as true when asking whether a reasonable juror could have found that defendant reasonably believed alternatives were not available.

¶ 24. Further, the trial court's suggestion that "there were not only legal means of medical treatment which could have reasonably been attempted, but there was also a legal means of cultivating marijuana" is faulty. This is not the issue. Defendant, by raising the necessity defense, concedes that she broke the law.

The bare fact that there are legal means of medical treatment and cultivation of marijuana is of no consequence. The issue is whether she acted *reasonably* in determining that none of those legal means was of use in preventing her son's further decline. See *Cram*, 157 Vt. at 469, 600 A.2d at 735. Here, taking defendant's proffer as true, a reasonable juror could conclude that a mother with an ill child acted reasonably in deciding that all other avenues for saving the child's life were foreclosed. That question, therefore, should have gone to the jury.

¶ 25. Finally, with respect to the fourth prong — that the injury resulting from the emergency must be of sufficient seriousness to outmeasure the crime — defendant's proffer satisfied this requirement. At the heart of the necessity defense is a difficult value judgment. A violation of a criminal statute is no small matter, but neither is a child's illness, particularly when, as here, that illness is life-threatening. Defendant proffers that she was placed in the hapless position of having to choose between following the law and saving — or at least prolonging — the life of her child. A reasonable juror could conclude that the life of a child outmeasured the seriousness of committing the crime of cultivation of marijuana. For that reason, the question was for the jury.

¶ 26. It is telling that many of our previous decisions denying the necessity defense are nothing like the present case. Most involve driving under the influence (DUI), while many out-of-state decisions involve civil disobedience. Where a defendant argued that it was necessary to trespass on a test-firing facility to prevent the testing of guns, in turn to prevent the deaths of civilians in El Salvador, we denied the defense because the defendant could not have believed that his actions would have a direct causal effect. *Cram*, 157 Vt. at 471, 600 A.2d at 735-36. Where a defendant did not tag a deer because he was afraid the tag would become dislodged — in effect, committing the crime to avoid committing the crime — we held that each of the elements of the necessity defense was missing. *State v. Sullivan*, 154 Vt. 437, 441, 578 A.2d 639, 642 (1990). Where a defendant claimed that it was necessary to take the wheel from his seventeen-year-old nephew who had stalled the vehicle in the middle of the road, we held that the defense was not available because the defendant's own conduct — his self-induced intoxication requiring his nephew to drive — created the emergency. *Squires*, 147 Vt. at 431, 519 A.2d at 1155. Where a defendant claimed necessity for DUI because his child

was missing earlier in the day, we held that no emergency existed at the time he was arrested because the defendant had already found his son. *State v. Dapo*, 143 Vt. 610, 614, 470 A.2d 1173, 1175 (1983).

¶ 27. In each of these cases, we held that the proffering party failed to make out a prima facie case on at least one of the elements and was thus not entitled to an instruction on the necessity defense. Courts, however, do not always deny a necessity defense jury instruction, even in DUI cases. See *Shotton*, 142 Vt. 558, 458 A.2d 1105. In *Shotton*, the defendant was arrested for DUI, but claimed necessity because she was badly injured and was seeking medical assistance. She said that she had been drinking and her husband assaulted her and pushed her down a flight of stairs. She further testified that no one was home but her husband, her telephone was disconnected, and the neighbors' homes were a short walk away, but she did not want to walk and risk finding no one home at those houses. She stated that she was driving to the hospital when she was pulled over. We explicitly noted that

> the jury should have had the opportunity to weigh the reasonableness and credibility of all the evidence, and to decide if it was sufficient to establish the defense of necessity. It was the function of the jury to determine first whether defendant was driving while under the influence of intoxicating liquor, and if she was, then to determine whether she was justified in doing so because of necessity. By refusing to charge the jury on the second issue, the trial court committed reversible error.

*Id.* at 561-62, 458 A.2d at 1107.

¶ 28. While it is true that the defendant in *Shotton* had other avenues available to her — for example, she could have walked to a neighbor's house to use the phone, even if no one was home — we held that it is up to the jury to decide issues of reasonableness and credibility. *Id.* We recognized that, although the jury could have chosen to believe the State over the defendant, the trial court nevertheless committed reversible error by refusing to instruct the jury on the necessity defense. *Id.* at 562, 458 A.2d at 1107. The same principle applies in this case. Defendant should have had the opportunity to present the necessity defense to the jury to determine issues of reasonableness and credibility.

¶ 29. Although the necessity defense has often been used in cases where a defendant disagrees with government policies and trespasses, pickets, or otherwise displays disagreement in illegal ways, this is not a civil disobedience case. The majority claims that defendant justified breaking the law "based on her disagreement or disapproval of the law's provisions." *Ante*, ¶ 12. The majority analogizes this case to a civil disobedience one, citing *Planned Parenthood of Mid-Iowa v. Maki* for the proposition that the defense cannot be used to "excuse criminal activity by those who disagree with the policies of the government." 478 N.W.2d 637, 640 (Iowa 1991) (per curiam). I agree that, typically, disagreement with government policy does not make criminal actions noncriminal. See *United States v. Dorrell*, 758 F.2d 427 (9th Cir. 1985) (necessity defense not available to justify defendants entering air force base and spray-painting government property to avert nuclear war and world starvation); *People v. Garziano*, 281 Cal. Rptr. 307 (Ct. App. 1991) (necessity defense not available to justify criminal conduct at abortion protest aimed at interfering with pregnant woman's constitutionally protected decision to terminate pregnancy); *State v. Dansinger*, 521 A.2d 685 (Me. 1987) (necessity defense not available to justify defendants trespassing on air national guard property to protest nuclear arms race); *State v. Prince*, 595 N.E.2d 376 (Ohio Ct. App. 1991) (necessity defense not available to justify unlawful activity in protest of CIA's on-campus recruiting efforts). Nevertheless, that is not the underlying tension of this case.

¶ 30. Although defendant conceded in her memorandum to the trial court that she was "dismayed" by many of the statutory provisions in the medical-marijuana law, being dismayed with the law was not her motive for growing marijuana in illegal quantities. Nowhere in the record does defendant state that her purpose in growing marijuana was to protest the provisions of Vermont's medical-marijuana law. Rather, it was her son's illness that she felt necessitated breaking the law. Defendant was not growing marijuana to achieve political ends — thus, the reasoning for barring civil disobedience defendants from using the necessity defense is inapplicable.

¶ 31. The trial court also erred in concluding that the necessity defense was legislatively precluded here. We have previously held that the necessity defense is not applicable if it has been precluded by the Legislature. *Cram*, 157 Vt. at 469, 600 A.2d at

735; see also *United States v. Oakland Cannabis Buyers' Coop.*, 532 U.S. 483, 491 (2001) ("Under any conception of legal necessity, one principle is clear: The defense cannot succeed when the legislature itself has made a 'determination of values.'" (quoting 1 W. LaFave & A. Scott, Substantive Criminal Law § 5.4, at 629 (1986))). But see *People v. Mower*, 49 P.3d 1067, 1071 n.2 (Cal. 2002) (refusing to follow *Oakland Cannabis* because it involved interpretation of federal law, not state law).[3] Nevertheless, here the Legislature did not preclude the necessity defense.

¶ 32. The Legislature has made a determination of values in this arena. It has determined that marijuana has therapeutic uses. See 18 V.S.A. §§ 4471-4474d (permitting patients with certain debilitating medical conditions to use marijuana for symptom relief, subject to various qualifications). Specifically, the Legislature has recognized that marijuana can be used to "alleviate the symptoms or effects of a . . . debilitating medical condition." *Id.* § 4472(10) (defining "use for symptom relief"). It has created a review board whose duties include "review[ing] studies, data, and any other information relevant to the use of marijuana for symptom relief." *Id.* § 4473(b)(5)(B). In enacting its therapeutic use of cannabis act, 2003, No. 135 (Adj. Sess.), the Legislature created a distinction between the medical and nonmedical use of marijuana. While protecting registered patients and caregivers from a measure of criminal prosecution, see 18 V.S.A. § 4474b, it did nothing to alter existing criminal penalties for marijuana possession and specifically enumerated restrictions on even the legal use of the drug, see 18 V.S.A. § 4474c (listing "[p]rohibitions, restrictions, and limitations regarding the use of marijuana for symptom relief" including use "for purposes other than symptom relief"). Thus, the

---

[3] The United States Supreme Court in *Oakland Cannabis* held that the necessity defense was unavailable to defendants who manufactured or distributed marijuana. 532 U.S. at 494. This left open the question of whether defendants who merely used marijuana could employ the necessity defense. In dicta, however, the majority went further and said that nothing in the Controlled Substances Act, nor in the Court's analysis, suggested that there should be a distinction between prohibitions on manufacturing and distributing and the other prohibitions in the Controlled Substances Act. *Id.* at 494 n.7. The concurring Justices reiterated that the holding applied only to manufacturing and distribution and "whether the defense might be available to a seriously ill patient for whom there is no alternative means of avoiding starvation or extraordinary suffering is a difficult issue that is not presented here." *Id.* at 501 (Stevens, J., concurring).

Legislature recognized and permitted the limited medical use of marijuana for seriously ill people.

¶ 33. The trial court incorrectly concluded that the Legislature must have intended to preclude the necessity defense because it "has twice made a deliberate choice as to the values at issue concerning the legal growth of marijuana and has decided not to include an exception for the defense of necessity." The trial court's reasoning does not withstand analysis. In Vermont, the necessity defense emanates from the common law. *State v. Pollander*, 167 Vt. 301, 308, 706 A.2d 1359, 1363 (1997). We presume that the Legislature has not overruled common law doctrines unless it does so explicitly. See *In re Estate of Lamore*, 2009 VT 114, ¶ 9, 187 Vt. 571, 989 A.2d 486 (mem.) (holding that the Legislature must express its intent to change common law rules in "clear and unambiguous language" (quotation omitted)). Here, as the trial court noted, the medical-marijuana statute says nothing about the necessity defense. But, contrary to the trial court's ruling, the legal significance of this omission is that the common-law defense has *not* been overruled and is therefore still available to defendant. See *id.*

¶ 34. The trial court further stated that, although it sympathized with defendant's situation, it was "bound to apply the law as enacted . . . and not as it *could* have been enacted." This is, however, the precise purpose of the necessity defense. See *United States v. Schoon*, 971 F.2d 193, 196-97 (9th Cir. 1991) (holding that necessity defense allows court to recognize "one-time exception" to a statute). The question, then, is whether the Legislature would formally make an exception for a mother like defendant who is trying to save her son's life by growing medical marijuana. Given the purpose underlying the law, as expressed by the Legislature, I cannot say that the Legislature intended to preclude the necessity defense here, and I would therefore send this issue to the jury.

¶ 35. One of the many sad ironies of today's decision stems from the fact that the majority's analysis rests entirely on defendant's failure to follow the precise contours of a relatively recent statute that aimed to decriminalize certain uses of medical marijuana. Had defendant been arrested before Vermont's medical-marijuana law went into effect, I imagine that the majority would reach a different decision today, as there would be no rationale for preventing defendant from presenting the necessity defense to the

jury. Now, after the Legislature has clearly shifted its position to allow some use of medical marijuana, the majority concludes that defendant cannot avail herself of the necessity defense since she has not followed the mandates of that law. The irony is that a statute that aimed to *decriminalize* certain uses of medical marijuana has effectively *criminalized* defendant's actions in this case.

¶ 36. Ultimately, this is a case in which the necessity defense should be heard by a jury. Indeed, it is a case where defendant's actions cannot be explained in any way other than through a presentation of the necessity defense. I worry that today's ruling will lead to a trial where defendant's actions will be viewed in a vacuum and where she will be treated as a run-of-the-mill drug possessor, when, in fact, according to defendant, she is a loving mother who simply wishes to provide her son with the best medical treatment available to avoid losing him like she lost her first son. Ascertaining the "ultimate truth or falsity" of defendant's necessity defense is "the principal mission of the jury," and the trial court should have squarely presented the defense to the jury so that they could "confront it, consider it, and resolve its truth or falsity by their verdict." *State v. Brisson*, 119 Vt. 48, 53, 117 A.2d 255, 257-58 (1955). I therefore respectfully dissent.

¶ 37. I am authorized to state that Justice Johnson joins this dissent.